International & Great Northern Railway Company v.
William H. Coolidge, Trustee, et al.

Decided April 15, 1901.

**1.—Railroads—Lien for Traffic Balance.**

The lien given by statute to secure a traffic balance due by any railroad to a connecting road interchanging business with it, is not to be restricted to the same species of property covered by the statutory laborers' lien, but extends to all the property of such railroad, including town lots received by it as a bonus and held for sale. Rev. Stats., art. 4538.

**2.—Same—Priority of Lien of Receiver's Certificates.**

Where the receiver of an insolvent railroad under orders of court issued receiver's certificates to repair and operate the road and pay expenses of the receivership, such certificates are a lien superior to the lien securing a traffic balance due a connecting road even, as to town lots not used by the road in its business, in the absence of an affirmative showing that the indebtedness covered by the certificate did not inure to the benefit of such lot. Garrett, Chief Justice, dissenting.

**3.—Same.**

Where receiver's certificates were issued under order of court to satisfy pay roll indebtedness incurred prior to the appointment of the receiver, and were by the order made a lien on the property, the lien in favor of the traffic balance due the connecting line was, as to the town lots, superior to the lien of such certificates, in the absence of evidence showing that the payment of such antecedent indebtedness was essential and necessary to the operation, preservation, or management of the property by the receiver.

**4.—Same—Order Held to Carry Lien.**

Where the order of court for the issuance of receiver's certificates to satisfy pay roll indebtedness did not expressly give them a lien, but provided that they should be of like character as other certificates previously authorized and which were by order secured by lien on the property of the railroad, the pay roll certificates were also secured by the same lien.

**5.—Same—Priority of Liens—Res Adjudicata.**

Where the order of court for the issuance of receiver's certificates and providing that they should be secured by first lien on the property of the railroad, was made before the intervention of a creditor claiming a traffic balance lien, such order was not res adjudicata as to the latter lien.

**6.—Same—Laborers' Lien Not Secured by Receiver's Certificate.**

Where an indebtedness of an insolvent railroad for labor done and material furnished it, accruing more than six months prior to the appointment of a receiver, was not evidenced by receiver's certificates, nor secured by statutory lien on certain town lots owned by the railroad the lien of such indebtedness was,

as to such town lots, subordinate to the lien of a connecting road for a traffic balance due it.

**7.—Same—Tax Liens.**

The lien of a connecting railroad for a traffic balance due it by an insolvent road can be subordinated, in so far as it affects town lots owned by the debtor road, to the lien in favor of the receiver's claim for taxes paid on the property of the debtor road, only to the extent of the taxes due on such lots.

Appeal from Brazoria. Tried below before Hon. Wells Thompson.

*J. A. Read,* for appellant.

*Frank Anderson,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—The Velasco Terminal Railway Company was, upon the petition of William H. Coolidge, one of its creditors, filed in the District Court of Brazoria County, on July 25, 1899, adjudged insolvent, and a receiver was appoined to take charge of and administer the property of said insolvent corporation. The appellant intervened in said suit on December 20, 1899, setting up, among other claims, an indebtedness of defendant to it of $4620.44, which amount was alleged to be the traffic balances due intervener by said Velasco Terminal Railway Company, and to be secured by the lien given in article 4538 of the Revised Statutes of Texas. Intervener alleged that at the time of the institution of the suit and the appointment of the receiver and ever since, said lien attached to and covered all the property and franchises of the defendant, including certain Angleton town lots of the defendant, against which said lien was alleged to be superior to all others. The extension of said asserted lien of the intervener to said town lots was contested by the other creditors.

The court below in his final judgment and decree winding up the affairs of said insolvent corporation, establishing and foreclosing the liens of the various creditors and ordering the condemnation and sale of all of the property and franchises of the defendant, ordered said town lots sold separately and apart from all the other property and the franchises of the defendant, and further adjudged and decreed that said traffic balance indebtedness was secured by the lien given under the statute before referred to, but that such lien did not extend to nor cover said town lots. In classifying the various claims and directing the order in which they should be paid out of the proceeds of the sale of all of the property and franchises of the defendant, all receiver's certificates issued under previous orders of the court were included in class A, as designated in said decree. A claim of plaintiff Coolidge for the sum of $8940 was included in class B; and the traffic balance claim of appellant was placed in class C. The decree then directs that all claims in class A shall be paid in full before any payment shall be made on any of the claims in class B, and that class B shall be paid in full before any payment shall be made on the claims in class C. The final judgment

was afterwards modified so as to direct the clerk to reserve from the proceeds of sale a sufficient amount to cover appellant's claim, which amount should not be distributed until a final termination of this appeal.

There is no issue of fact in the case. The town lots in question were not a part of defendant's railroad, nor were they used in connection therewith, but were donated to it as bonus for extending its road to the town of Angleton, and were held by the defendant for sale. These lots had been so owned and held by the defendant for more than twelve months prior to the institution of this suit. At various times before and after appellant became a party to the suit, orders were made by the court or the judge thereof authorizing money to be borrowed and expended and certificates to be issued and sold by the receiver, such indebtedness and certificates to be a first lien upon all of the property and franchise of the defendant. These orders show that the money authorized to be borrowed and the proceeds of all certificates authorized to be issued and sold were to be used for the purpose of repairing and operating defendant's railroad and paying the taxes due upon defendant's property and the necessary expenses of the receivership. It was not shown or offered to be shown that any of the money borrowed or any of the proceeds of the sale of certificates were expended upon the town lots in question, or for their improvement or benefit in any way. During the whole of the receivership and for more than a year prior thereto the operating expenses of defendant's railroad was largely in excess of its revenues. The traffic balance claimed by appellant was due for appellant's portion of joint passenger and freight earnings collected by the defendant during the ninety days next preceding the appointment of the receiver.

Appellant's first assignment of error assails the judgment of the trial court in holding that the lien given by article 4538 of the statute to secure the traffic balance due appellant does not extend to or cover the Angleton town lots. Article 4538 of the Revised Statutes is as follows:

"Art. 4538. Every railway which may interchange business with any other connecting railway under the provisions of this chapter or otherwise, is hereby declared to be a trustee for such connecting railway to the extent of all sums of money received by it for the joint business interchanged between them, and which may properly belong to such other railway. Such sums of money shall be due and payable from one connecting line to the other once every ninety days, and each connecting railway shall have a lien upon the property and franchises of connecting railways to the extent of balances due each quarter, which lien shall be superior to all other liens upon said property and franchises save and except laborers' liens, as already provided by law, and may be enforced in any of the courts of this State having jurisdiction by law of the subject matter and the parties."

We think by the terms of this article the lien thereby created extends to all property of the connecting road which may be indebted for traffic

balance due by it. Appellees contend that notwithstanding the article does not in terms restrict the lien to any certain species of property owned by such connecting road, such restriction is plainly implied from the provision which makes the lien created subordinate to the laborers' lien, which lien by the express terms of the statute by which it is created extends only to the railroad and its equipment. We do not think this contention is sound. The lien given by this article being upon all of the property of the road, and the laborers' lien being only upon a portion of the property, it seems clear to us that by the provision before mentioned the Legislature only intended to declare that the lien given to secure traffic balance should not take precedence of the laborers' lien on the property of the road subject to the latter lien, and did not intend to restrict the traffic balance lien to the same species of property covered by the laborers' lien. If the Legislature had intended the traffic balance lien to extend only to the railroad and its equipment, we must presume that it would have used language expressing such intent. If there was ambiguity or uncertainty in the language used in the article, we might consider the possible effect of the construction sought to be placed upon it in determining what was the legislative intent; but when the language used, as in this case, is plain and unambiguous and admits of but one construction, the effect of the article when given its plain meaning is no concern of the courts, provided it is not violative of any constitutional provision. We are of opinion appellant's lien to secure the traffic balance indebtedness due it by defendant extended to the Angleton town lots, and the trial court erred in refusing to establish and foreclose said lien upon said lots.

Appellant's second assignment assails the judgment of the court below in decreeing that the $15,000 receiver's certificates issued under order of the judge of said court on September 26, 1899, were superior as a lien against the Angleton town lots to appellant's traffic balance lien. These certificates were ordered issued and sold upon the petition of the receiver, showing that it was necessary to incur said indebtedness to enable him to repair and operate the railroad and pay the necessary expenses of the receivership. While there is much force in appellant's contention that none of the money obtained from the proceeds of the sale of such certificates was presumably spent upon said town lots nor for their benefit, and that therefore said certificates should not be made a charge upon said lots superior to appellant's lien, we have concluded that, in the absence of an affirmative showing that said indebtedness did not inure to the benefit of said town lots and to the benefit and protection of appellant's lien upon the other property of the defendant, we would not be authorized to disturb the judgment of the court below in holding the lien of said certificates superior to that of appellant's upon said lots. The receiver had the administration of the whole of the property, which became a trust fund to be managed for the benefit of all the creditors, and it was his duty to so manage and protect all of said property as to prevent if possible any deterioration in its value. The expenses of the

receivership must be shared by all of the lienholders for the establishment and foreclosure of whose liens the receivership proceedings were instituted, and no property in the hands of said receiver can be exempted from its share of the proper and necessary expenses of the receivership, unless it be affirmatively shown that no part of such expenses was incurred for the benefit of said property. No such affirmative showing having been made in this case, this assignment can not be sustained. Randolph v. Trust Co., 91 Texas, 615; Trust Co. v. Railway, 117 U. S., 434.

Chief Justice Garrett dissents from the views above expressed upon the question raised by this assignment, and is of opinion that the receiver's certificates issued under the order of the court for expenses incurred in the repair and operaton of the railroad by the receiver are secured by a first lien upon all of the property of the defendant including the town lots, irrespective of whether or not said lots were in any way benefited by the indebtedness so incurred.

Appellant's fourth assignment of error attacks the judgment of the court below in decreeing that $7496 of the receiver's certificates issued under order of the judge dated September 26, 1899, to satisfy pay roll indebtedness due from February 1, 1899, to the date of the receiver's appointment, and ranked in class A in the court's classification of the indebtedness of the defendant, was superior as a lien upon said Angleton town lots to appellant's said traffic balance claim. The order of the court upon which said certificates were issued is as follows: "And said receiver is further ordered, authorized, and directed to issue additional receiver's certificates of like character as those hereinbefore mentioned to extent of $7882.20, and to sell same at not less than par and apply the proceeds to payment of pay roll from February 1, 1899, to date of his appointment." It will be observed that this order does not in terms provide that said certificates shall be secured by a lien upon the property of the defendant, but the certificates before mentioned in said order are secured by such lien, and the provision that the pay roll certificates shall be of like character would, we think, require that they be secured by a like lien.

Irrespective of this order, it is clear that no lien existed upon the town lots in queston to secure said pay roll, and the issue is presented as to the authority of the court to create a lien upon said lots to secure said pay roll indebtedness, superior to appellant's traffic balance lien. While the power of the court to authorize receivers, who are administering property under its direction, to raise money necessary for the preservation and management of the property, and for this purpose to issue certificates secured by a first lien upon such property, can not be questioned, such power can not be arbitrarily exercised. The payment of wages due the employes of the defendant railroad prior to the appointment of the receiver might, under some circumstances, be necessary and proper in the operation and management of the property by the receiver, but prima facie such is not the case, and such indebtedness stands upon a different basis from claims arising under the receivership.

The record in this case does not disclose any petition of the receiver showing the necessity for the payment of said antecedent pay roll to enable him to operate and manage the property in his charge, nor is there any finding by the court in the order authorizing the issuance of said certificates, or in the final judgment, that the payment of such antecedent indebtedness was essential and necessary to the operation, preservation, or proper management of the property by the receiver. In the absence of such showing we think the court below erred in holding that appellant's traffic balance lien on the lots in question should be sub-ordinate to the lien fixed by the court to secure the payment of said certificates. Wallace v. Loomis, 97 U. S., 146; Miltenberger v. Railway, 106 U. S., 312.

The order of the court authorizing the issuance of said certificates and providing that they shall be secured by a first lien upon the property of the defendant was made before the appellant intervened in the suit, and without any notice to it, and the fixing of such lien is not res adjudicata, nor binding on appellant by reason of its failure to sooner except to said order. Upon this subject the Supreme Court of the United States, in the case of Union Trust Company v. Railway, quoting from an opinion rendered by Mr. Justice Harlan in a previous case, say: "Those who take receiver's certificates must be deemed to have taken them subject to rights of the parties who have prior liens upon the property and who have not, but should have been brought before the court. While the court, under some circumstances and for some purposes and in advance of the prior lienholders being made parties, may have jurisdiction to charge the property with the amount of receiver's certificates issued by its authority, it can not, without giving such parties their day in court, deprive them of the priority of their lien. When such prior lienholders are brought before the court, they become entitled upon the plainest principles of justice and equity to contest the necessity, validity, effect, and amount of all such certificates as fully as if said questions were there for the first time presented for determination. If it appears that they ought not to have been made a charge upon the property superior to the lien created by the mortgage, then the contract rights of the prior lienholders must be protected."

The ninth assignment of error is as follows: "The court erred in adjudging and decreeing that the $7433.92 of the claim of plaintiff, William H. Coolidge, trustee, purporting to represent indebtedness of defendant to plaintiff, as assignee, for work, labor, services, material, etc., done, performed, and furnished in connection with defendant's railroad, being included in the $8940 of plaintiff's claim, ranked in class B, was superior, as a charge and lien against said Angleton town lots of defendant, to appellant's traffic balance claim." The indebtedness mentioned in this assignment was not evidenced by any receiver's certificates, nor was it secured by any statutory lien upon the town lots in question, but was due upon claims which accrued more than six months prior to the appointment of the receiver, and there is no showing in the record

which would authorize the court to subordinate appellant's lien upon said town lots to the payment of these claims.

The fifteenth assignment complains of the judgment of the court in decreeing that the claim of plaintiff, William H. Coolidge, for $1506, alleged to have been advanced by him for the payment of taxes upon defendant's property be fixed as a prior lien upon all of defendant's property, to appellant's traffic balance claim. We think the court erred in adjudging said entire amount to be a lien upon the town lots in question. The tax lien upon said lots only existed to secure the amount of taxes due thereon, and the court was not authorized to extend this lien so as to secure the payment of the taxes due upon the other property of the defendants to the impairment of appellant's traffic balance lien upon said lots.

It is unnecessary to consider any of the remaining assignments of error, as all of the questions therein raised have been determined in our consideration of the assignments above discussed.

The judgment of the court below will be reversed and this cause remanded in order that the funds of the receivership may be marshaled and the appellant's lien fixed and classified as indicated in this opinion.

*Reversed and remanded.*

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.