No. 362.   F. M. Hubbell, Intervener, v. Texas Southern Railway Company et al.

**Railway—Receiver—Liens of Vendors, Laborers, Material Men, etc.—Foreclosure—Priority of Payment.**

A railway having been sold under foreclosure of the bondholders' mortgage, question arose as to priority of payment (between holders (1) of a claim for price of land sold the company for right of way secured by vendor's lien; (2) of receivers' certificates for money borrowed to pay off wages due laborers by the company and secured by laborers' lien; (3) of like certificates to pay off liens for supplies and materials furnished the company) out of so much of the price realized on the foreclosure sale as was proportionate to the part of the road to which the vendor's lien attached (25¼ percent). Held, that by the order authorizing the issuance of the certificates, this took priority such as was given to the debts discharged by their proceeds; that the laborers' liens were superior to the vendor's liens and were to be first paid; that the vendor's lien was next and took precedence of so much of the certificates as went to pay material men's claims; that as to a surplus derived from the sale of the certificates which the receiver used for operating expenses it was to be assigned to the rank of the laborers' or material men's liens respectively, in proportion to the amount of each which was actually paid off; that the attorneys' fee provided by contract for the holder of the vendor's lien took the same lien as his debt.

*T. P. Young* and *T. S. Schluter,* for intervener Hubbell.—Where the receiver's certificates are issued during the administration of the assets of an insolvent railroad by a court of equity, in a receivership, for the purpose of paying claims which existed against the railroad before the appointment of a receiver, and which claims were secured by the statutory liens in favor of laborers, mechanics and others, such certificates are not secured by any higher or better lien that such claims were secured by, and they stand in the place of such liens so far as classification and priority of payment out of the proceeds of the property is concerned; especially is such the rule where the judgment authorizing such certificates so provides.   International & G. N. R. Co. v. Coolidge, 26 Texas Civ. App., 595; Galveston Exhib. Ass'n v. Perkins, 80 Texas, 62; Faber v. Muir, 64 S. W., 938; 24 Am. & Eng. Ency. Law, 2d ed., pp. 39, 40; Farmers L. & T. Co. v. Centralia R. C. Co., 96 Fed., 636; Metropolitan Trust Co. v. Railway Co., 103 N. Y., 245; State v. Edgefield, 6 Lea (Tenn.), 353; Tome v. King, 64 Md., 183; 2 Beach on Private Corporations, sec. 746; Florida v. Anderson, 91 U. S., 667; Carpenter v. Blackhawk, 65 N. Y., 43.

The court could not legally issue a receiver's certificate to pay a debt the railroad owed before the receiver was appointed for rolling stock delivered to it before the receiver was appointed, and make such certificates a superior lien to the vendor's lien existing on the right of way long before the debt was incurred.   International & G. N. R.

Co. v. Coolidge, 26 Texas Civ. App., 595; 24 Am. & Eng. Ency. Law, 2d ed., pp. 39, 40; Farmers' L. & T. Co. v. Centralia R. Co., 96 Fed., 636; Metropolitan T. Co. v. Railway Co., 103 N. Y., 245; State v. Edgefield, 6 Lea (Tenn.), 353; Tome v. King, 64 Md., 183.

Where the vendor's lien applied to and existed on the land on which a part of the railroad lay, and the whole road is sold in receivership proceedings to pay debts, and sold free of the vendor's lien, and in satisfaction of it, that proportion of the proceeds of said sale which is equal to the proportion of the length of the road on which the lien existed to whole length of the road should be applied to the payment of the vendor's lien, in preference to all other debts except clerk's cost and master's fees. Union Trust Co. v. Illinois Midland Co., 117 U. S., 436; Rome R. Co. v. Sibert, 97 Ala., 393; Green v. Coast Co. L. R. R. Co., 54 Am. St. Rep., note p. 402; Hand v. Savannah R. Co., 12 S. C., 314; Crosby v. Morristown & C. G. R. Co., 42 S. W., 522; Compton v. Jessup, 68 Fed., 327; Galveston Exhib. Ass'n v. Perkins, 80 Texas, 62; Faber v. Muir, 64 S. W., 938-9.

*M. B. Templeton,* for St. Louis Trust Co.—The so-called "vendor's lien" debt asserted by F. M. Hubbell, being a pre-existing obligation the Texas Southern Railway Company contracted long before the receivership, and only secured by a lien, is not an obligation entitled to priority over the obligations made by the court incident to the receivership, neither is it entitled to pro rata payment with the receiver's obligations. Royal Trust Co. v. Railway, 120 Fed., 13.

F. M. Hubbell being the owner and holder of the vendor's lien debt at the time of the decree ordering the issuance of receiver's certificates, and being a party to the proceeding, and having actual knowledge thereof and consenting thereto, and not appealing therefrom, is estopped from denying the priority of lien in favor of receiver's certificates, and hence the St. Louis Union Trust Company, the holder of the said certificates, should be first paid out of the fund in court before any payment is made upon the vendor's lien debt. Union Trust Co. v. Midland R. Co., 25 Am. & Eng. R. Cases, 577; Humphreys v. Allen, 4 Am. & Eng. R. Cases, 20.

LEVY, ASSOCIATE JUSTICE.—This appeal is one in a series of appeals by creditors from the order of the court in distribution of proceeds of sale of the properties of the Texas Southern Railway Company under decree of foreclosure in receivership proceedings, and is by F. M. Hubbell, owner of the demand called in the record "the vendor's lien against the right of way of the Texas Southern Railway Company." The opinion this day rendered in the appeal of the St. Louis Union Trust Company, holders of the receiver's certificates, is here referred to for a statement of the receivership proceedings and the issuance of the certificates.

The record shows that the demand in question arose as follows: On the 24th day of January, 1901, the Commercial Lumber Company, a private corporation doing a sawmill business, sold and conveyed by warranty deed to the Texas Southern Railway Company a strip of land 100 feet wide and 18¾ miles in length, extending from

a point near Gilmer, in Upshur County, Texas, to Montvale Springs, in Harrison County, Texas, and from Montvale Springs to Harleton, in Harrison County, Texas. The conveyance also included the improvements on the strip of land, which consisted of a railroad with iron rails and cross-ties which formed the superstructure of a saw-mill private tram. The property was not connected in any way with the public use, and was not used in the business of a common carrier. The consideration of the conveyance was $45,000, $8,500 cash and the remainder in twelve notes. In the deed conveying the land from the Commercial Lumber Company to the said railway company a lien to secure the unpaid purchase-money was reserved in express terms and expressly recited in the notes. On the 24th of February, 1901, the Texas Southern Railway Company, under authority of its board of directors, executed a deed of trust to one J. E. Tucker on the said particular property conveyed to secure the said purchase-money notes and the said deed of trust, reciting that it was given to secure the purchase-money notes and the vendor's lien and to preserve and perpetuate and further secure the vendor's lien. Both the deed and deed of trust were only recorded in Upshur and Harrison Counties. The deed of trust and the deed mentioned were submitted to the Railway Commission of Texas, and the Railway Commission approved the purchase. Four of the said vendor's lien notes were paid off by the railway company, leaving the eight here in suit unpaid. The Commercial Lumber Company afterwards transferred without recourse the notes to the St. Louis Union Trust Company, and the St. Louis Union Trust Company, on the 13th of October, 1904, transferred them to F. M. Hubbell, the appellant. After the proceedings for a receiver, and during the pendency of receivership proceedings, and on the 25th of January, 1908, before the sale of the railway, F. M. Hubbell filed a suit in the District Court of Harrison County, Texas, against the Texas Southern Railway Company and C. L. Taylor, the receiver, and the Commercial Lumber Company, and J. E. Tucker, trustee, and the Orient Trust Company, plaintiff in receivership proceedings, to recover the amounts due on these notes and attorney's fees, and to foreclose a vendor's lien on the property described in the conveyance from the Commercial Lumber Company to the Texas Southern Railway Company. The suit was discontinued as to J. E. Tucker, trustee, and a judgment was rendered by the District Court against the Texas Southern Railway Company for the amount of the notes, interest and attorney fees, with foreclosure of the vendor's lien on the property described in the petition and deed mentioned. In this judgment it was provided that the road be sold as under the foreclosure decree in the receivership case as an entirety, and that Hubbell be paid out of the proceeds of such sale "according to preferences and priorities of said liens." On June 4, 1908, appellant filed his intervention in the receivership proceedings, and asked that his judgment be classified and paid out of the proceeds of the Texas Southern Railway Company property, and this intervention was amended at the following August term, 1908, before the sale, in which he claimed that the said judgment should be paid out of the proceeds of the sale, and in preference to all costs and receiver's certifi-

cates, except the judicial costs. After the sale of the railway properties, and on hearing of this amended intervention of appellant, at the October term, 1908, the court directed the payment of his demand on a basis of equality of payment with the receiver's operating expenses and the receiver's certificates in question. The appeal is from the ruling of the court.

*After stating the case.*—The specification of error, by assignments of appellant and the St. Louis Union Trust Company, challenges the ruling of the court that the demand of appellant Hubbell should be on a basis of equality of payment out of the proceeds of sale with the certificates of the receiver. Each party contends for priority of payment.

The final decree of the court, of September 22, 1904, foreclosing the mortgage of the bondholders and ordering the sale of the railway properties, it appears, adjudged that the railroad should be sold "subject to specific liens, if any, of persons not parties to this action," and "to all holders of vendor's lien demands, whether herein or hereafter adjudicated." Appellant Hubbell thereafter, it appears, prosecuted to judgment and foreclosure his vendor's lien notes in a distinct action against the railway company, the Commercial Lumber Company, plaintiff in the receivership action, and the receiver. In his judgment of foreclosure it is recited that, "and it further appearing to the court it is to the interest of the defendant and all other parties creditors of the said defendant, Texas Southern Railway Company, that the railroad and entire property of the said defendant should be sold in bulk, or as a whole, and that the sale of that part of the said railroad and property of the said defendant, upon which this plaintiff has and holds a lien as above set forth, would result in loss both to the defendant and all other creditors of the defendant, the Texas Southern Railway Company, and the court having directed a sale of said entire railroad and property of the Texas Southern Railway Company to be made on the first Tuesday in May, 1908, it is therefore further ordered that this judgment be paid out of the proceeds of such sale according to preferences and priorities of said liens." The court, it appears, confirmed the sale of all the properties to the purchasers free of all liens and claims of every kind. From the foregoing statement of the record it is made to appear that only a decree of strict foreclosure of his lien was decreed by the court to appellant Hubbell. By the terms of the decree, in lieu of an order of sale under the same, appellant was referred to the proceeds of sale "according to preferences and priorities of said liens." This was a final decree, and was neither appealed from nor vacated. By this intervention to have his rights determined as to participation in the funds of sale appellant, we think, became and was a full and formal party to the proceedings for the express purpose of giving him such relief as he should show himself entitled to "according to preferences and priorities of said liens." Appellant himself makes no contention that he is not a proper and full party to the order of the court, and bound thereby unless vacated on appeal.

The record shows that the railway company was insolvent, and that it was in fact administered by the court for the benefit of all its

creditors, and that the assets of the railway company were sold to pay all its indebtedness and the proceeds of sale were being distributed by the court according to the rights and equities of the creditors. Appellant by his intervention sought to have his judgment paid out of $25\frac{1}{4}$ percent of the total fund arising from the sale, which he alleged was the value of the particular property he had a lien against, and that this percent was the amount that this particular property brought under the sale. The court, at the instance of appellant, made findings, and he states: "It was admitted that the part of the railroad sold by the Commercial Lumber Company to the Texas Southern Railway Company, and on which the vendor's lien was retained, was $18\frac{3}{4}$ miles in length, and that it was part of the Texas Southern Railroad, and the Texas Southern Railway was 74 22-100 miles in length, so that the $18\frac{3}{4}$ miles on which the vendor's lien existed was equal to $25\frac{1}{4}$ percent of the entire railroad, including that part on which the vendor's lien existed, had been sold as hereinbefore recited, all together, and the purchase money paid into the court in the cause." This is not challenged by the parties. No sale, however, was ordered by appellant's judgment. Appellant's status, as made by the record, is that of a lienholder against the particular property of the railway company claiming payment out of the fund which this particular property brought at sale. By admission of the record such particular property brought at sale of the entire property, and was worth, $25\frac{1}{4}$ percent of the total price of $286,000. The only contestants of appellant's demand are the holders of the receiver's certificates. It appears conclusively that the purchase price of the entire road, after deducting the $25\frac{1}{4}$ percent in controversy, is more than sufficient to pay the costs and allowances by the court, as well as all the operating indebtedness incurred by the receiver as such, and appellant can have no concern as to such. This would dispose of any question in respect thereto. The question in the record is, therefore, as to whether appellant's demand is payable out of this particular part of the fund in priority of the certificates. After paying the operating expenses of the receiver, and costs, the fund remaining, inclusive of the $25\frac{1}{4}$ percent in controversy, is not sufficient to pay in full the certificates and the demand of appellant. We have ruled in the appeal of the certificate holders, this day decided, that the certificates in question were, by the terms of the order of the court authorizing their issuance, payable "as the laborers' liens and materialmen's liens under the Texas statutes," which these certificates were used as a form of payment of. See St. Louis Union Trust Co. v. Texas Southern Ry. Co. et al. It is recognized that a lien exists in case of a grant of a right of way to a railway company when the consideration in the grant is not paid. Howe v. Harding, 76 Texas, 17, 13 S. W., 41. A vendor's lien may be assigned. McAlpine v. Burnett, 19 Texas, 497. The statutes provide the lien on the railroad for both laborers and materialmen. So we are able to say by the record that appellant Hubbell's right to payment out of the fund arises from a vendor's lien on the property, and that the certificate holders' rights arise by a lien created by the court of the legal force and extent of laborers' liens and materialmen's liens under the statutes. The exact nature

of the laborers' and materialmen's liens is not defined in the order of issuance of the certificates. The finding of the court shows that it was admitted in the trial that the order of classification of such liens was "class 'B' claims, being those of labor operatives incurred within one year prior to appointment of receiver," and "class 'C' claims, being statutory liens of materialmen and contractors." The labor liens referred to in the certificates must be taken, in the proof, to mean and to be the class of operatives of the railroad doing manual service, and materialmen's liens to mean the class of persons furnishing material for construction or repair of the buildings or railroad. Referring, therefore, the face of the order authorizing the issuance of the certificates to these provisions of the statutes, it is evident that the court intended to give a lien to the certificates to the extent that both "operatives" of a railroad and "materialmen" have under the terms of the statute on the railway properties. From the record we are unable to say whether the material furnished was for buildings or equipment or roadbed of the railway company. The order of the court authorizing the issuance of the certificates fixed such lien on all the property of the railway of every kind and character. Appellant, not being a party to the action at the time of the issuance of the certificates, is entitled to contest the priority of payment of the certificates as against his lien. International & G. N. Ry. Co. v. Coolidge, 26 Texas Civ. App., 595, 62 S. W., 1097. In the instant case, as in this last case, it is not made to appear that the issuance of the certificates to pay off these debts of the railway company was necessary for the operation of the road by the court. The first question, therefore, is whether such statutory liens are payable in priority of the vendor's lien. Ordinarily vendors' liens have priority over mechanics' liens. 2 Warveille on Vendors, sec. 710. And a contract to purchase land does not constitute the vendee the "owner" within the terms of the statute. Galveston Exhib. Ass'n v. Perkins, 80 Texas, 62, 15 S. W., 633; Taber v. Muir, 64 S. W., 938. The construction given section 3301, Revised Statutes, is that mechanics' liens do not have preference over any prior lien or encumbrance upon the land to the inception of the mechanic's lien. Sullivan v. Texas Briquette Coal Co., 94 Texas, 541, 63 S. W., 307. Appellant's lien was shown to be prior to any mechanic's lien. It follows that such lien can not be ruled to be superior to appellant's. The lien for operatives who performed labor for the company, however, by the terms of the statute, is "a lien prior to all others upon such railroad and its equipment for the amount due for his personal services." There does not appear that any equipment or rolling-stock is here in controversy by appellant, only the railroad. The Legislature has authority to provide that the claims of employes of railroads shall be liens prior in right to any mortgage or conveyance made subsequent to the enactment of the statute. 3 Cook on Corporations, p. 2985. Laborers who perform manual services under this article have a lien. St. Louis, A. & T. Ry. Co. v. Mathews, 75 Texas, 92, 12 S. W., 976. In the light of the statutes and decisions, we are confronted with the difficulty of determining from the face of the order authorizing the issuance of certificates the extent of the lien that the certificates would have on the particular part of the

fund here in discussion as against appellant's lien. The order provides that the certificates shall be paid "with preference and priority, the same as class 'B' and class 'C' would be." The amount of the certificates to be paid as class "B" and class "C" respectively is not fixed. As the certificates have the force and extent of two characters of liens, we would not be warranted in giving the entire amount the full extent of the lien that "operatives" of a railroad have, or lessening the entire amount to the extent that a materialman would have. The certificate contract does not do so. In this indefinite situation, we refer to the order for further light, and it recites that the receiver is authorized to borrow a sum "not to exceed $150,000, as may be necessary to pay said claims in class 'B' and class 'C.'" In order, therefore, to give the certificates the extent of the lien so provided in the order, as against appellant, we would be required to go to the facts of the case and see the amounts paid for material liens and labor liens respectively. The records show that about $28,330 was the amount of the materialmen's liens paid off in class "C," and about $89,170 of labor liens in class "B" paid off from money derived from the certificates. Giving the certificates the extent of the liens so provided in the order and contemplated under the terms of the order, the certificate holders would be entitled to have payment of their certificates to the full amount represented by the amount of labor liens paid off in priority of appellant. As mechanic liens, in the record, would be subordinate to appellant's lien in the particular fund, he would be entitled to be paid next before the amount of certificates representing the amount of mechanics' liens paid off. As the amount of the certificates was $150,000, this leaves in the record about $32,-500 above the amounts actually necessary, in the record, to pay off the lien indebtedness mentioned. Referring to the order authorizing the certificates again, it appears therefrom that the receiver was "empowered and authorized to borrow money in a sum not to exceed the sum of $150,000 as may be necessary to pay said claims in class 'B' and class 'C' and for which said sum of money to issue receiver's certificates." There is no question made by assignment that the receiver exceeded his authority in issuing certificates above the amounts necessary to pay these said debts, and we do not here undertake to decide such question or challenge the validity of the surplus amounts. We assume that they were all properly issued. As the certificate holders rely on the order for their entire claim, we must decide their rights as under a contract. Referring to the evidence in the record, it appears that this $32,500 was used by the receiver in paying current expenses of the operation of the road. If the certificates were all properly issued by the receiver, as we assume in the record, it is true that the certificate holders would not legally be remitted to see that the receiver properly applied the proceeds. But it is quite proper to refer to what was done with the money in order to fix the extent of and properly bring the same under the proper certificate lien for this amount, as against appellant, such lien being dual. The certificate holders do not seek to have their rights determined for any such surplus above the actual lien indebtedness of the company, for the payment of which the certificates were authorized, outside and inde-

pendent of the order authorizing their issuance. But they rest upon such order. So doing, the surplus in question must be payable as the order provided, either as a lien as operatives would have, or as a mechanic's lien would have. As the order authorized a sum not to exceed the amount of the certificates "as may be necessary to pay" such indebtedness of the company as liens for operatives and mechanics, and assuming the validity of the entire issue, it must have been contemplated, under such wording of the order by the receiver and the certificate holders, that a surplus above the actual indebtedness mentioned would probably exist after paying such indebtedness. In order to sustain the certificates for the full amount, and to give proper effect and force to the order of their issuance, it must be ruled that, if a surplus existed above the amount "as may be necessary to pay said creditors in class 'B' and class 'C,' " that it was contemplated by the certificate holders, under the terms of the order of the court, that such surplus would be paid out of the proceeds ratably as the ratio of the debts of the labor liens bore to the mechanics' liens. In such ratio should this surplus amount mentioned, we think, be distributed and paid, as against appellant, and we so rule.

It is the contention of appellant that labor liens have no priority over a vendor's lien. The terms of the statute, we think, settle the contention. A mortgage lien to secure bonds of a railway is subordinate to such liens, it is conceded. A vendor's lien held by an assignee is no more sacred than any other contract lien. A voluntary conveyance of right of way to a railroad company is consent of the owner that the land go into possession of the railway for such public uses and purposes. Such voluntary act and consent places the property thereafter under statutory control and regulation as a part of a railroad operated as a common carrier under the laws of the State, as against labor liens. It is quite different from the rule applicable to forced or condemnation proceedings as against the owner of the land. It is argued that as against labor liens of the statute the lienholders' right to subject the land to his payment should be prior, because the property by voluntary sale comes into the possession of the company charged with the lien, and the company takes it in the condition it was when it came into its possession. The suit is not for recovery of the title to the land, and the statutory liens in question have been determined valid to the extent of the terms of the statute, which are "a lien prior to all others." It is upon the reason that it is necessary to operate railroads as a public concern, and the public have a right and concern in their being properly operated. It is a policy of the land that in such operation the operatives of the railroad have a prior lien to secure their unpaid wages. Sellers of right of way, as well as all other voluntary lienholders, must take notice of the provisions of the law that their liens are subordinated by the terms of the statute to liens of operatives of a railroad for unpaid wages. When the assets of an insolvent railroad company fail in sufficiency to pay both the lienholders for property sold and the unpaid wages of laborers, it is not a harsh rule in policy and principle that the law has chosen that the loss, if any, should fall on the voluntary lienholders for property sold rather than on the laborers.

The $7,000 issue of certificates of date September, 1905, was issued to purchase necessary rolling stock for the operation of the road by the receiver, and the order recites that it was necessary for the operation of the road by the receiver that it be purchased. The court classed its payment as operating expenses, and ordered its payment as such, and we have ruled in the appeal of the St. Louis Union Trust Company that this was proper and not error. It was further payable out of the amount of the proceeds of sale that appellant does not seek to have his claim paid out of.

Appellant complains of the refusal of the court to allow his judgment for attorney's fees to be paid at all out of the proceeds of sale. This was error, and the same in this respect is here allowed. Appellant stood on his contract and the certificate holders stood on their contract, and equities were not being adjusted, but contract rights determined by the court. Appellant's contract provided a lien for attorneys' fees. Summerville v. King, 98 Texas, 338, 83 S. W., 682.

The judgment of the court was ordered reversed, and here reformed, that out of the 25¼ percent of the proceeds of sale here in controversy such amount of the certificates, and interest thereon, of the $150,000 held by the St. Louis Union Trust Company, appellee, as here assigned to the lien of the rank of labor liens for operatives of the railroad, be paid in full in priority to appellant Hubbell's claim, and that then next be paid in full the claim of appellant Hubbell, and then next be paid the amount of the certificates and interest of appellee as here assigned to the lien of the rank of materialmen. The costs of appeal to be paid equally by appellant and appellee.

*Reformed and rendered.*

Writ of error refused.