## BRECKENRIDGE CITY CLUB v. HARDIN.
### (No. 10132.)

(Court of Civil Appeals of Texas. Fort Worth. March 17, 1923. Appellant's Rehearing Denied May 26, 1923.)

**1. Mechanics' liens ⬤⟲57(4)—Contract for material held made with owner.**

Where material was delivered to lots which were being purchased by a corporation being organized, in accordance with a contract with the corporation promoters, and title to the lots was acquired by the corporation about a month prior to the final delivery of all the material, the contract *held* one with the owner of the lots, as the final acquisition of the title related back to the time of contracting.

**2. Corporations ⬤⟲448(2)—Contract of promoters adopted by corporation held not invalid.**

Where material was delivered to lots which were being purchased by a corporation being organized, in accordance with a contract with the corporation promoters, *held*, that the contract was not invalid because, at the time of the order for the material and during the greater portion of the time of its delivery, the corporation had not become incorporated; the corporation having later adopted the contract.

**3. Corporations ⬤⟲448(2) — Corporation may adopt promoter's contract.**

A corporation when established as a legal entity, may, with knowledge of the circumstances, adopt an act or contract made by a person, even though unauthorized, acting in its behalf or in its name.

**4. Mechanics' liens ⬤⟲211(1) — Taking note held not waiver of lien.**

Where, at the time that the owner's note was taken by materialman, nothing was said indicating an agreement or purpose that the materialman's lien be waived, the mere taking of the note did not amount to a waiver of the lien.

**5. Mechanics' liens ⬤⟲161(4) — Does not include attorney's fees.**

A materialman's lien, under the Constitution, exists only for the material furnished, and does not cover the materialman's attorney's fees.

**6. Appeal and error ⬤⟲223—Mechanics' liens ⬤⟲239—Inclusion of par value of stock in judgment for lien held fundamental error.**

Where materialman accepted for $100 of his account $100 of stock in the corporation which owned the premises, this merged the account to that extent in the new contract, and hence, where the corporation failed to deliver the stock as agreed, it was fundamental error to include the sum of $100, representing the par value of the stock, in the account for which judgment for lien was given, and the materialman could recover only upon the balance of the account, with interest and attorney's fees, and the value of the $100 in stock, and have his lien foreclosed only for the amount

of principal and interest, excluding attorney's fees and the $100 taken from the account.

Appeal from District Court, Stephens County.

Action by H. H. Hardin against the Breckenridge City Club. From judgment for plaintiff, defendant appeals. Reformed and affirmed.

Leaverton & Hardy, of Breckenridge, for appellant.

E. W. Bounds, of Fort Worth, for appellee.

CONNER, C. J. The appellee, Hardin, sued the Breckenridge City Club, duly incorporated under the laws of Texas, declaring, in his original petition, upon a promissory note alleged to have been executed by the defendant for the sum of $2,371.60, dated July 15, 1921, bearing 10 per cent. interest from its date, and providing for an additional 10 per cent. on the principal and interest, if placed in the hands of an attorney for collection; also alleging that the note had been given for certain building material furnished the defendant to erect a clubhouse known as the Breckenridge City Club, in Breckenridge, Tex., and located on certain lots situated in the town of Breckenridge, and that a materialman's lien, had, in due time and manner, been fixed to secure said indebtedness.

In an amended petition, filed December 5, 1921, the plaintiff alleged as his cause of action that during the months of September, October, November, and December, 1920, and the month of February, 1921, he, at the instance and request of the defendant sold and delivered to it lumber and building material aggregating the sum of $2,471.60, which was received by the defendant and used by it in the erection of a building and certain improvements on lots 10, 11, 12, 13, 14, 15, and 16 in block 8 in the Roselawn addition to the city of Breckenridge, and that the defendant agreed and bound itself, acting through its agent, to pay the plaintiff for the amounts charged as indicated in an itemized and verified account attached to the pleadings as an exhibit; that on or about the 1st day of February, 1921, the defendant agreed with plaintiff as to the correctness of said account, and further "agreed that said account should be closed by the defendant executing its note for the sum of $2,371.60 and issuing to the plaintiff stock in the said Breckenridge City Club of the value of $100, and said note was executed by the defendant, acting by and through its president, H. A. Leaverton, and delivered to the plaintiff, and is hereto attached and marked 'exhibit B' and made a part hereof."

It was further alleged that plaintiff had filed his verified and itemized account for the material referred to, had the same recorded in the lien records, and averred that the defendant had failed to deliver to the plaintiff stock "of the value of $100, promised in part settlement of said account," and had refused to pay the account and to pay said note. Plaintiff prayed to recover the sum of $100 upon the itemized account and the further sum of $2,371.60 as principal upon said note, with interest at 10 per cent. from its date, and the further sum of 10 per cent. on the principal and interest due upon said note, for a foreclosure of his constitutional and statutory mechanic's and materialman's lien.

The defendant, by its first amended original answer, presented general and special exceptions to the plaintiff's amended petition, denied the allegations therein made, and specially denied that materials of any kind had been furnished the defendant to erect the clubhouse, or that the plaintiff had made any agreement or contract with the owner of said lots by virtue of which said material had been furnished. But the defendant further averred that, if for any reason he had been mistaken in the foregoing allegations, then the account had been paid and the materialman's lien, if any, satisfied by the execution and delivery of the note described in the plaintiff's petition.

The trial was before the court without a jury, and the following are the court's conclusions, omitting formal parts, to wit:

"From the evidence I find that the plaintiff furnished the said material upon orders placed with him by V. E. Steen and others, who purported to be acting as agents and representatives of the Breckenridge City Club, which was at that time not incorporated; that the said material was ordered out as needed by one R. P. Jones, who was acting as superintendent in charge of the construction of a building on said lots for the Breckenridge City Club; that the said lumber and material was furnished and delivered on the building lots between the —— day of September, 1920, and the —— day of February, 1921. I find the value of the said lumber and material to have been $2,471.60, and that of this amount the plaintiff had agreed to accept $100 in the stock of the said Breckenridge City Club as a credit on said account. I find that on the 11th day of April, 1921, the plaintiff, substantially in accordance with the requirements of articles 5621, 5622, 5623, and 5624 of Vernon's Sayles' Revised Statutes of Texas, and within four months from the date of the furnishing of the last item of said material, filed his affidavit for the purpose of fixing a materialman's lien upon the said lots and the improvements thereon, and caused the same to be recorded in the lien records of Stephens county, Tex. I find that during the construction of said building, the said Breckenridge City Club was incorporated by obtaining a charter from the state of Texas, and thereafter became the owner of the said lots and the building erected thereon in which the said material had been used, and took possession of the same. I find that the said corporation, through its officers, had notice of the furnishing of said material by plaintiff and of his claim therefor, at and before the time of taking posses-

sion of said property. I further find that the said corporation acting by and through its president, H. A. Leaverton, on the 1st day of February, 1921, agreed to pay the said account to plaintiff, and on said date executed and delivered to plaintiff its promissory note for the sum of $2,371.60, due and payable 90 days after date, and also at said time agreed to issue and deliver to plaintiff a certificate of stock in said corporation of the par value of $100. I find that the said promissory note is past due and unpaid, and that the said certificate of stock had not been delivered to plaintiff.

"Conclusions of Law.

"As a matter of law I conclude that the defendant corporation having received, used, and obtained the benefit of the material purchased under contract made by persons purporting to represent and act for it prior to its incorporation, and having executed its note for the payment of said account, in all things assumed the said contract, which then became its own contract, and that it is liable for the amount due. I further conclude that plaintiff is entitled to a lien upon the property described in his petition, and to a foreclosure of the same. John W. Mackey, Special Judge 90th Judicial District Court of Stephens County, Texas."

Upon the conclusions so noted, the court rendered a judgment in favor of the plaintiff, H. H. Hardin, for $2,816.12, and foreclosed a materialman's lien as prayed for in the plaintiff's petition. From this judgment the defendant has duly appealed.

[1] Appellant insists that the judgment is unsupported, for the reason that at the time of furnishing the material the title to the lots upon which the materialman's lien was asserted was not in the appellant, but, on the contrary, was in the name of one H. C. Burch. Mr. Leaverton, the president of the appellant corporation, however, testified in the same connection that:

"There was in contemplation the building of a clubhouse and incorporating it. It was incorporated and functioning in December, 1920. There was a trust fund provided of approximately $24,000, and I was to administer this fund for the purpose of paying the bills for improvements on the lots mentioned."

It thus appears that the parties interested had in contemplation a purchase of the lots at and prior to the delivery of any of the material, for the carpenter, a Mr. Jones, who constructed the building, testified that the lumber and material was ordered and delivered on the grounds as it was needed. It is further undisputed that the title to the lots was in fact acquired by the appellant in December, 1920, about a month or more prior to the final delivery of all of the material. We are of opinion, therefore, that under such circumstances the order for the material by a member of the association interested in the final incorporation and clubhouse, and the accompanying contract, even though implied, to pay for said material, was, within the spirit of the Constitution, a contract with the owner of the lots. There can be no reasonable contention that the purchase of the lots was not in contemplation at the time of the order for the material, and in equity, in so far as necessary to support appellee's right, the final acquisition of the title related back and existed at the time of the contract for the purchase of the material. See Schultze v. Alamo Ice & Brewing Co., 2 Tex. Civ. App. 236, 21 S. W. 160.

[2] A further contention in behalf of appellant is that, at the time of the order for the material and during the greater portion of the time of its delivery, the appellant was not an incorporated body, and that therefore any contract made purporting to be for or in behalf of the corporation was of no force and effect. In Fletcher Cyclopedia Corporations, vol. 1, § 150, p. 306, it is said:

"It is a fundamental principle of law that at least two competent parties are necessary to the execution of a contract. That parties are not competent within the meaning of this principle except they are in being is too obvious to require the citation of authority. Hence it is that until a corporation has come into being, at least to the extent of having a de facto existence, it cannot contract as a corporation. Since it cannot contract and, for that reason, cannot appoint an agent to contract in its behalf, it follows that it will not be chargeable, in the first instance, with liability upon a contract made by its promoters, or by agents appointed by them prior to the time of its coming into being, even though the contract may have been made in its name and with the understanding that it would perform the same."

In a succeeding section (section 152) the author points out that while the doctrine of the more recent English cases seems to be that, in the absence of a charter or statutory provision, a contract made by the promoters of a corporation on its behalf before incorporation is a nullity, and that the corporation cannot adopt or ratify it, and thus become bound by it, after incorporating, and that this view is also taken by the Supreme Court of Massachusetts, further says:

"The courts of other states have repudiated the English doctrine and hold that a contract made by the promoters of a corporation on its behalf may be adopted or ratified by the corporation when organized, and that the corporation is then liable, both at law and in equity, on the contract itself, and not merely for the benefits which it has received. In accordance with this view, bonds issued by promoters in the name of a corporation before its organization may be adopted or ratified by its directors after its organization, and in such a case they will become the valid bonds of the corporation. Another application of this doctrine has been made in the case of promissory notes, and it is held that if the promoters of a corporation purchase goods for it before its organization, and give a note for the price, and the corporation afterwards accepts the goods with knowledge of the facts, it thereby

adopts or ratifies the note and is liable thereon."

[3] In the case of Whitney. v. Wyman, 101 U. S. 392, 25 L. Ed. 1050, by the Supreme Court of the United States, it was held that where a corporation, at the date of a contract, had not filed its articles of association. as required by the statute, but subsequently ratified the contract by recognizing and treating it as valid, thus made it in all respects what it would have been if the requisite corporate power had existed when it was entered into. To the same effect are several of our own cases. See Ennis Cotton Oil Co. v. Burks, 39 S. W. 966, where it was held, by the San Antonio Court of Civil Appeals, that a corporation is bound, where it adopts a contract made before its existence began by a person who represents himself as its agent. In Lancaster Gin & Compress Co. v. Murray Ginning-System Co., 19 Tex. Civ. App. 110, 47 S. W. 387, by the Dallas Court of Civil Appeals, it was said, in substance, that the contract of a promoter of a corporation purchasing machinery for the corporation before it was organized, and which the corporation thereafter received and used, bound the corporation. See, also, of like effect, McDonough v. First National Bank of Houston, 34 Tex. 310. While it is true, as argued in behalf of appellant, that there can be no such thing as a contract with a nonexisting body, and that in a strict technical sense such a body can have no agents or ratify an account or contract of one purporting to act for an intended corporation, yet the authorities cited, we think, undoubtedly established the proposition that the corporation, when established as a legal entity, may, with knowledge of the circumstances, adopt an act or contract made by a person, even though unauthorized, acting in its behalf or in its name. That such is the case here cannot be doubted, for the evidence shows that from time to time during the delivery of the material bills therefor were presented to and o. k.'d by a Mr. Steen. who, it seems, originally directed the carpenter, Mr. Jones, to secure the material, and after such approval by Mr. Steen the bill would be presented to Mr. Leaverton, who would pay therefor by check. Mr. Leaverton testified that a trust fund of approximately $24,000 had been provided, and that he was "to administer the fund for the purpose of paying the bill for improvements on the lots. * * * He was pretty familiar with the affairs of the corporation." And that "H. A. Leaverton, trustee, made five or six payments on this bill of lumber by checks given to the H. H. Hardin Lumber Company." And that "I executed the note introduced here under authority from the company. I had authority to execute that note, which was executed in payment of that account, as far as it went, and the balance of $100 was to be covered by $100 worth of stock."

[4] In view of the findings and of this evidence and of the authorities above cited, we think it must be held without doubt that the appellant corporation adopted the contract to pay for the material furnished, and that upon the execution of the note declared upon, the obligation became that of the corporation. We are of the further opinion that, as between appellee and appellant, under the circumstances of this case, the contract for the material was with the owner of the premises, and that the lien existed in favor of appellee, independent of the statute under the terms of our Constitution. See Strang v. Pray, 89 Tex. 525; Lignoski v. Crooker, 86 Tex. 324; Riggins v. Richards, 97 Tex. 229. It seems also undisputed that at the time of the execution of the note declared upon nothing was said indicating any agreement or purpose that the materialman's lien would be waived. The mere taking of the note, therefore, did not amount to a waiver of the lien. See F. & M. Natl. Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966.

[5] What we have said we think disposes of the material questions presented by appellant's assignments of error, with the exception that complaint is made in that the lien on the lots in question was foreclosed and ordered sold for the payment, not only of the amount of the note declared upon and its interest, but also for the attorney's fees. In this respect the judgment should be corrected, inasmuch as under the terms of the Constitution the lien exists in favor of the materialman only for the material furnished. See Mathews et ux. v. Building & Loan Ass'n (Tex. Civ. App.) 48 S. W. 744.

[6] While not complained of, we think there was also error, fundamental in its nature, in foreclosing the lien for the $100 of the account in excess of the sum specified in the promissory note. Upon the execution and delivery of the note accompanied, as the undisputed evidence shows, with a contract for the delivery of the $100 of stock in the corporation, the original account as such was merged in the new contract, and, while the plaintiff might have sued upon the account rather than the note, as unpaid, yet we think he was not entitled to sue and recover upon both the implied contract for the payment of the materials on account and upon the later express contract, evidenced by the note and agreement to deliver stock. There is no allegation in the pleadings of appellee of the value of the stock, nor does the evidence show what that value is or was. The judgment as rendered seems to be based upon both the note and the account, for recovery was awarded for the principal sum of the note, together with the interest as therein specified and attorneys' fees, and then resort made to the account for a balance of $100. Had the suit been upon the account instead of upon the note, interest at the legal rate only

could have been allowed and no attorneys' fees.

Appellee's right, therefore, as it seems to us, was to recover upon the note for the principal sum, interest, and attorneys' fees as therein specified, and the value of the $100 in stock, had such value been shown, with a foreclosure of the materialman's lien upon the lots described in the plaintiff's petition for the payment of the principal sum and interest specified in the note, excluding from the operation of the lien the attorneys' fees and the $100 taken from the account, and the judgment will be so reformed. In all other respects, for the reasons stated, the judgment is affirmed.