## HOFFMAN v. CONTINENTAL SUPPLY CO.

### No. 1835.

Court of Civil Appeals of Texas. Eastland.

Sept. 30, 1938.

Rehearing Denied Nov. 11, 1938.

852

Grisham & Grisham, of Tyler, for plaintiff in error.

Turner, Seaberry & Springer, of Eastland, and McGown & McGown, of Fort Worth, for defendant in error.

GRISSOM, Justice.

This is a suit by The Continental Supply Company against Cecil H. Lockhart, upon an open account, for oil well casing, etc., sold by it to Lockhart, and against P. L. Hoffman for an alleged conversion of pipe sold by plaintiff to Lockhart, and upon which pipe plaintiff asserts a lien under Article 5473, R.S.1925, as amended in 1929, Vernon's Ann.Civ.St. art. 5473.

On November 28, 1930, Humble Oil & Refining Company and Lockhart entered into a contract, evidenced by a letter from the Humble Company to Lockhart, which, insofar as it is here material, is as follows:

"This will confirm an agreement entered into wherein the Humble Oil & Refining Company agrees to sell and you agree to purchase three oil and gas leases in Loving County, Texas, described as follows and subject to the terms and conditions as outlined below: (Here follows description of the land)

"Each tract above mentioned was assigned out of a different lease. However we shall consider the three leases as a single unit. The total consideration for these leases is $100 per acre or $22,000. You agree to pay this Company this money out of 7/16 of the first oil produced, whether from one or all the leases to be assigned.

"It is further agreed that you will start operations for a well sixty (60) days from November 25th, 1930, and drill same with due diligence to the oil and gas horizon in the Delaware Pay now producing oil in this area of Loving County, unless oil and gas in paying quantities are found at a lesser depth.

"It is understood that you are to bear all the expenses of drilling and other operations.

"The title to this acreage was approved when same was assigned to this company by Lockhart & Company and the P. V. Petroleum Company, however, we do not obligate ourselves to defend this title.

"All the obligations called for in our leases above referred to shall be assumed by you, and in the event you become unable to meet same, this Company shall be immediately notified in writing.

"It also is agreed that you will furnish this Company with well logs, samples and other information pertaining to the drilling and completion of said wells.

"Please evidence your acceptance of this contract by signing and returning to us the copy of this letter enclosed. * * *"

In January, 1931, Lockhart commenced the drilling of a well on the land described in his contract with the Humble Company. Thereafter from January 26, 1931, to March 3, 1931, Lockhart purchased from plaintiff, on open account, material and supplies which he used in drilling said well. In March, 1931, the well having been drilled to the horizon stipulated in the contract, the well was completed by Lockhart as a "dry hole." Thereupon, Lockhart pulled the casing from the well and stacked it on the leased premises. In April, 1931, Lockhart, through an agent, sold to Hoffman 4138 feet of casing which Lockhart had purchased from plaintiff, and which had been used in drilling the well. On May 25, 1931, after Hoffman had bought, paid for and removed the casing, plaintiff filed in the office of the County Clerk of Loving County, in which county the well was drilled, its sworn account against Lockhart for the purpose of fixing a materialman's lien upon Lockhart's interest in the mineral leasehold estate, and upon the material and supplies furnished by plaintiff to Lockhart and used by Lockhart in drilling said well, including said casing. On September 11, 1931, Humble Oil & Refining Company executed to Lockhart an assignment of the oil and gas leases.

Article 5473, insofar as it is here material, provides as follows: "Any * * * corporation, * * * who shall, under contract, express or implied, with the owner of any * * * oil or mineral leasehold interest in land * * * furnish * * * material * * * or supplies used in * * * drilling * * * such oil or gas well * * * shall have a lien on the * * * leasehold interest therein * * * and upon the material and supplies so furnished * * *."

The trial was to the court. The court rendered judgment for plaintiff against defendant Lockhart for the amount of his account with plaintiff and against the defendant Hoffman for conversion of the pipe purchased by Hoffman from Lockhart, which it found to be of the value of $3800; from which judgment Hoffman has appealed.

Hoffman contends the court erred in holding a lien existed in favor of plaintiff

against the casing purchased by Lockhart from plaintiff, for the reason that Lockhart was not an "owner" of an "oil or mineral leasehold interest in land" within the meaning of article 5473. With reference thereto Hoffman, in construing the contract between Humble Company and Lockhart heretofore set out, states: "The most logical construction of the writing is that the company was thereby obligated to deliver the assignment upon payment of the agreed consideration. It might not be an unreasonable construction to hold that Lockhart, under its terms, would become entitled, upon discovery of oil in paying quantities, to an assignment of the lease, such assignment to be burdened with an oil payment obligation in the sum of $22,-000 to be paid out of 7/16ths of the first oil produced; but certainly this would be the most favorable construction that Lockhart could have insisted upon with any show of reason."

Plaintiff, appellee here, contends that when Lockhart bought the pipe from plaintiff he was in possession of the oil and gas lease under an executory contract of purchase, and that since he performed the terms of the purchase contract and thereby became entitled to sue for and enforce specific performance, and since he later received an assignment vesting him with title to the lease, he was the "owner" of a mineral leasehold interest in land within the meaning of said statute.

We are of the opinion that if the contract between the Humble Company and Lockhart did not evidence an equitable title or interest in the leasehold estate in Lockhart so as to constitute Lockhart the "owner" thereof within the meaning of article 5473, when the well had been drilled by Lockhart to the contract depth and found to be a dry hole Lockhart was then entitled to compel the execution and delivery by the Humble Company of an assignment of the leases, either burdened with an oil payment or with an interest reserved by the Humble Company. (We think it is immaterial here whether such payment as was provided for in the first paragraph of the lease be regarded as a debt or whether the transaction should be regarded as a reservation by the Humble Company of an interest in the leasehold estate conveyed. See Tennant v. Dunn et al., Tex.Com.App., 110 S.W.2d 53.)

■ It appears to be settled that if Lockhart was entitled to enforce specific performance of the Humble Company's contract to assign the lease he was an owner thereof within the meaning of article 5473. Northern Texas Realty & Const. Co. v. Lary, Tex.Civ.App., 136 S.W. 843, 846, writ refused; Schultze v. Alamo Ice & Brewing Co. et al., 2 Tex.Civ.App. 236, 21 S.W. 160. Also, that a purchaser of land under an executory contract of purchase, who, after the sale by a materialman of supplies upon which the materialman claims a lien, later obtains a conveyance of the property, is an owner within the meaning of the statute. R. B. Spencer & Co. v. Brown, Tex.Civ.App., 198 S.W. 1179, 1181, writ refused; Hicks v. Faust, 109 Tex. 481, 212 S.W. 608; Breckenridge City Club v. Hardin, Tex.Civ.App., 253 S. W. 873; Wm. Cameron & Co., Inc., v. Trueheart, Tex.Civ.App., 165 S.W. 58. It appears from the decisions cited that if Lockhart was the owner of the equitable title, or was entitled to enforce a specific performance of the Humble Company's contract to assign the lease, or, if Lockhart afterwards obtained the assignment, he was an "owner" within the meaning of article 5473. (We have heretofore concluded that Lockhart was entitled, at least, upon the completion of the well to enforce specific performance of the Humble Company's contract to assign the lease to him.)

■ Appellant insists that the assignment by the Humble Company to Lockhart was not effective for the reason that although the assignment was duly executed, it was not shown to have been delivered. We think there is circumstantial evidence sufficient to authorize the trial court's conclusion that it was delivered. However, an actual manual delivery of the instrument is not a prerequisite to the vesting of title in Lockhart if the grantor so intended. City of Corpus Christi v. Guth, Tex. Civ.App., 68 S.W.2d 546, writ refused; Taylor v. Sanford, 108 Tex. 340, 193 S. W. 661, 5 A.L.R. 1660; Haraway v. Haraway, Tex.Civ.App., 59 S.W.2d 249.

■ We conclude that the evidence was sufficient to authorize a conclusion by the trial court that if Lockhart was not the "owner" of any "mineral leasehold interest in land" at the time he purchased the pipe, that he thereafter, by complying with the terms of his contract with the Humble Company, became entitled to enforce specific performance of the contract to assign the lease and for that reason was an

owner within the meaning of article 5473, and further, that Lockhart thereafter ac- quired title to the lease and thereby became an "owner" within such article. 29 Tex. Jur. 504; Schultze v. Alamo Ice & Brewing Co., supra; William Cameron & Co. v. Trueheart, supra.

Since the pipe was sold under contract with the "owner" of a mineral leasehold interest in land and used in drilling a well thereon, and since plaintiff by filing its affidavit fixed a materialman's lien which related back and took effect at the time the casing was furnished, it results that plaintiff acquired a valid lien superior to the rights of the defendant Hoffman. Trammell v. Mount, 68 Tex. 210, 4 S.W. 377, 2 Am.St.Rep. 479; Longhart Supply Co. v. Keystone Pipe & Supply Co., Tex. Civ.App., 26 S.W.2d 389. Also, see Berry v. Harrett, 5 Cir., 83 F.2d 671; Chicago Lumber Co. v. Fretz, 51 Kan. 134, 32 P. 908; Floete v. Brown, 104 Iowa 154, 73 N. W. 483, 65 Am.St.Rep. 434; Galveston Exhibition Ass'n v. Perkins, 80 Tex. 62, 15 S.W. 633; Hubbell v. Texas Southern Ry. Co., 59 Tex.Civ.App. 185, 126 S.W. 313; Montgomery v. Allen, 107 Ky. 298, 53 S. W. 813; Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324.

We do not think the above decision conflicts with the cases cited by appellant, such as Taber v. Interstate B. & L. Ass'n, 91 Tex. 92, 40 S.W. 954, and Galveston Exhibition Ass'n v. Perkins, supra. In most of the cases cited by appellee, the interest of a purchaser under an executory contract was held insufficient to constitute a buyer an "owner", but, as stated by appellee each decision was rendered in connection with a fact situation in which the executory contract of purchase had been breached by the buyer, the buyer had neither title nor right to enforce specific performance, and in addition plaintiff was seeking to enforce the lien as against the title of the vendor.

Hoffman contends the court erred in holding plaintiff had a lien against the pipe purchased by Hoffman because the evidence failed to show an agreement between plaintiff and Lockhart that the casing was to be used in drilling this particular well. We think the proposition must be overruled for the reason that, according to our interpretation, the statute in question (Article 5473) does not require an agreement for the pipe to be so used, but the statute only requires that it be ac-

tually used in drilling such well. Article 5473. However, we think, the evidence sufficient to authorize a conclusion by the trial court that under the agreement between Lockhart and plaintiff the pipe was furnished for use in drilling the well.

We shall next consider whether the judgment must be reversed because plaintiff did not prove it had a permit to do business in Texas.

Plaintiff's petition contained the following allegation: " * * * The Continental Supply Company is a corporation organized and existing under and by virtue of the laws of the State of Delaware with its principal office and place of business in Dallas, Dallas County, Texas, and doing business in Texas under and by virtue of a lawful permit so to do * * *." The exhibits attached to plaintiff's petition, and made a part thereof, also reveal that the plaintiff is a foreign corporation doing business in Texas. There is no allegation that the transaction which is the basis of plaintiff's suit involved Interstate Commerce.

Plaintiff having alleged that it was a foreign corporation with (1) its principal office and place of business in Texas, and (2) that it was doing business in Texas, has, we think, by such allegations brought itself clearly within the class of corporations referred to in Article 1529, R.S.1925, and Article 1536, R.S.1925, as amended in 1931, Vernon's Ann.Civ.St., art. 1536. They provide that such corporation may not maintain a suit in this State unless it had filed its articles of incorporation and obtained a permit to do business in Texas. Plaintiff alleged it had obtained such permit. This it failed to prove. Under such allegations the burden of proving that it had obtained such permit rested upon the plaintiff. Hoffman's general denial was sufficient to raise the issue. 11 Tex.Jur. 185. Under such situation the trial court erred in rendering judgment for plaintiff against defendant Hoffman. Taber v. Interstate Bldg. & Loan Ass'n, 91 Tex. 92, 94, 40 S.W. 954; Smith et al. v. Jasper County Lumber Co., 124 Tex. 156, 76 S. W.2d 505; General Motors Acceptance Corporation v. McCracken, Tex.Civ.App., 48 S.W.2d 480; Jenkins v. Pure Oil Co., Tex.Civ.App., 53 S.W.2d 497; Feder v. Texas Bitulithic Co., Tex.Civ.App., 82 S. W.2d 724, 726; Bigelow v. Delaware Punch Co., Tex.Civ.App., 37 S.W.2d 353; Cosey v. Supreme Camp of American

Woodmen, Tex.Civ.App., 103 S.W.2d 1076, writ dismissed; Oklahoma Tool & Supply Co. v. Daniels, Tex.Com.App., 290 S.W. 727, 728; Smythe Co. v. Ft. Worth Glass, etc., Co., 105 Tex. 8, 13, 142 S.W. 1157.

The judgment against Lockhart is affirmed; the judgment against Hoffman is reversed and the cause remanded.

Affirmed in part and reversed and remanded in part.

### On Motions for Rehearing.

In deference to the able motion for rehearing by defendant-in-error (plaintiff in the trial court) in which it is insisted that we erred in reversing the judgment of the trial court, because of plaintiff's failure to prove that it had a permit to do business in Texas, we have again carefully examined the authorities.

■ As stated in the original opinion, plaintiff alleged that it was a foreign corporation; that it had its principal office and place of business in Texas; that it was doing business in Texas, and had a permit to do so. Defendant's general denial raised the issue and we think necessitated proof by plaintiff of its allegation that it had a permit to do business in Texas. In so holding we are not unmindful of decisions to the effect that where it is alleged merely that a plaintiff is a foreign corporation and has a permit to do business in Texas plaintiff is not required to prove that it has such permit. Such decisions are based upon the fact that such allegations do not show a necessity for obtaining a permit. We further concede that even under the allegations found here (if not conflicting), if it were further alleged that the transaction out of which this suit arose was one involving interstate commerce, the prior allegations might be treated as surplusage and proof of a permit not be required. But, we think, plaintiff's allegation that it had obtained a permit cannot be treated as surplusage and proof thereof be dispensed with because plaintiff further alleged (1) that it was a foreign corporation and (2) that it had its principal office and place of business in Texas, and (3) that it was doing business in Texas. Such allegations show that plaintiff was, by virtue of Article 1529, R.S.1925, required to obtain a permit, or suffer the penalty of not being permitted to maintain its suit as provided by Article

1536, R.S.1925, as amended in 1931, Vernon's Ann.Civ.St. art. 1536.

Article 1529, insofar as it is here material, provides: "Any corporation for pecuniary profit * * * desiring to transact or solicit business in Texas, or to establish a general or special office in this State, shall file with the Secretary of State a duly certified copy of its articles of incorporation; and thereupon such official shall issue to such corporation a permit to transact business in this State * * * ."

Article 1536, provides, in part: "No such corporation can maintain any suit or action * * * in any court of this State * * * unless at the time such contract was made * * * the corporation had filed its articles of incorporation under the provisions of this Chapter."

■ Plaintiff definitely brought itself within the purview of Article 1529 by alleging that "it was a foreign corporation; that it was doing business in Texas and had its principal office and place of business in Texas. Our Supreme Court has said: "To do business in this state imports a carrying on of business of the corporation for the purposes of its organization, while the transaction of business in this state imports the idea of isolated transactions in the line, of course, of the purposes of its creation." S. R. Smythe Co. v. Ft. Worth Glass & Sand Co., 105 Tex. 8, 142 S.W. 1157, 1159.

■ The issue as to plaintiff's right to maintain the suit must, of course, be raised by the pleadings. Here plaintiff has injected the issue into the case by the stated allegations; defendant denied such allegations; thus the issue was raised. Plaintiff, having thus assumed the burden, was required to prove that it had a permit or subject its suit to dismissal. If plaintiff did not think it was required to make such proof and did not expect to make it, why did it make the detailed and extensive allegations quoted in the original opinion? It seems apparent that in drawing its pleadings, plaintiff recognized the necessity of such proof, if the issue should be raised, and attempted to bring itself squarely within the provisions of Article 1529. If not, it could have done all that was necessary in that connection by simply alleging that it was a corporation, duly incorporated. Article 1999. We think the allegations not only bring plaintiff squarely within the stat-

utes, but the reasonable implication from the facts alleged and language used is that the transaction was intrastate. At least, it is shown that it was considered by plaintiff as such a transaction as came within the provisions of Article 1529, requiring a permit. To hold with plaintiff in its present contention would be to say that, notwithstanding the detailed allegations of plaintiff, it was nevertheless incumbent on defendant to allege, in order to raise an issue to be determined on the trial, that the transaction did not involve interstate commerce. If it is to be so decided, and we think it cannot, then who has the burden of proving plaintiff has or has not the right to maintain the suit?

In Smith v. Jasper County Lumber Co., 124 Tex. 156, 160, 76 S.W.2d 505, plaintiff alleged that it was a Louisiana corporation with its principal office and place of business in Jasper County, Texas, and that it had a permit to do business in Texas. In the Supreme Court said corporation contended that, notwithstanding said allegations, it was not necessary to prove its permit to do business in Texas, unless the petition further showed that the cause of action grew out of an intrastate transaction. The court, in an opinion by Judge Ryan, said [page 507]:

"The precise question came before the Supreme Court on certified question in Taber v. Interstate B. & L. Ass'n, 91 Tex. 92, 40 S.W. 954, 955. The inquiry of the Court of Civil Appeals was whether it is necessary for a foreign corporation doing business and having a branch office in this state to prove that it had a permit to do business here when the demand arose; the plaintiff having alleged that fact and the defense being a general denial. * * *

"As pointed out by Judge Dibrell, in Smythe Company v. Ft. Worth Glass & Sand Co., 105 Tex. 8 at page 18, 142 S. W. 1157, 1161, a foreign corporation desiring 'to do either of three things, to transact business, or solicit business, or establish a general or special office in this state, is required to procure a permit.' * * *

"We think this case comes within the rule announced in Taber v. Interstate B. & L. Ass'n, 91 Tex. 92, 40 S.W. 954, and the burden was on the plaintiff to allege and prove compliance with the statute. * * *

"Because the company failed to make the necessary proof of its having obtained proper permit to transact business or solicit business or establish an office in this state, judgment in its favor must be reversed."

In Allen v. Tyson-Jones Buggy Co., 91 Tex. 22, 24, 40 S.W. 393, 714, in answer to a certified question, the Supreme Court, in an opinion by Justice Brown, said: "To the question thus understood, we answer that it was not necessary, in connection with the facts stated, to allege a compliance with the statute, because it does not appear that the plaintiff belonged to anyone of the classes of corporations named. The plaintiff was not desiring to solicit business in this state, nor was it desiring to establish a general or special office in this state."

The court further stated that plaintiff's allegations showed a transaction involving interstate commerce and, therefore, it was not necessary to allege or prove that plaintiff had obtained a permit.

In Taber v. Interstate Building & Loan Ass'n, 91 Tex. 92, 94, 40 S.W. 954, plaintiff alleged that it was incorporated and doing business under the laws of the State of Georgia, with its principal office and place of business in Columbus, Georgia, and that it had a branch office at Fort Worth, Tarrant County, Texas, and that it had a permit to do business in Texas. Defendant answered by a general denial. Plaintiff failed to prove that it had a permit. The Court of Civil Appeals certified to the Supreme Court the question: "Whether it is necessary for a foreign corporation, doing business and having a branch office in this state, to prove that it had a permit to do business here at the time of making the contract * * * the petition having alleged that fact and the defense being a general denial." "To the question propounded we answer that it was necessary for the corporation (plaintiff below) to prove that it had a permit to do business in Texas at the time that the contract sued upon was made in order that the court might enter judgment in its favor."

In S. R. Smythe Co. v. Ft. Worth Glass & Sand Co., 105 Tex. 8, 142 S.W. 1157, 1161, the court said: " * * * we direct attention to the peculiar provisions of article 745, in providing that any foreign corporation 'desiring to transact business in this state, or solicit business in this

state, or establish a general or special office in this state,' shall procure a permit before doing so. It will be observed that a desire on the part of the foreign corporation to do either of three things, to transact business, or solicit business, or establish a general or special office in this state, is required to procure a permit."

In Feder v. Texas Bitulithic Co., Tex. Civ.App., 82 S.W.2d 724, 726, the court said: "The petition in the present case showing the existence of an office in Texas, the burden was on the Bitulithic Company to prove that it had been granted a permit to do business in Texas."

In Jenkins v. Pure Oil Co., Tex.Civ. App., 53 S.W.2d 497, 499, plaintiff alleged it was a foreign corporation with its home office and principal place of business in Texas, and that it had a permit to do business in Texas. The court said: "The conclusion is therefore inevitable that appellee's failure to prove that it had a permit authorizing it to transact business in Texas, or to establish an office in Texas, prohibited judgment from being entered in its favor. The provisions of article 1529, supra, not only require a foreign corporation to have a permit to transact intrastate business in this state, but also such permit where a foreign corporation establishes a general or special office in this state. The distinction is thus pointed out in the case of Oklahoma Tool & Supply Co. v. Daniels, supra, viz.: 'It is thus seen that no foreign corporation is required to take out a permit from our secretary of state, except one who desires "to transact or solicit business" in this state, or to establish an office here.' "·

In Generál Motors Acceptance Corporation v. McCracken, Tex.Civ.App., 48 S.W. 2d ·480, plaintiff alleged it was a foreign corporation with an office in El Paso County, Texas, and doing business in Texas under a permit issued by the Secretary of State, and that in the contract sued upon the defendant had promised to pay at the plaintiff's office in El Paso. The court said [page 482]: "Under such allegations, we think, it became necessary for appellant to prove the existence of a permit to do business in Texas, before it would be entitled to recover in this suit.

* * *

"Appellant, having pleaded that it was doing business in Texas and had an office in El Paso county at which place the payments were to be made, was called upon to prove its permit to do business in the state before it could recover, and the trial court, in the absence of such proof, was clearly justified in dismissing the suit."

We think it evident from the foregoing authorities that it has been determined in Texas that a foreign corporation alleging, as in this case, that it is doing business in Texas, has its principal office and place of business in Texas, and has a permit to engage in business in Texas, is required to prove that it has such permit. The allegation that it has such permit cannot be treated as surplusage for the reason that the allegation that such foreign corporation is doing business in Texas and has its principal office there, brings it within the provisions of the Statute requiring that it obtain a permit to do business in Texas. It is also well established that when plaintiff has made such allegation the issue as to the truth thereof is raised by defendant's general denial. Therefore, in this case, we conclude plaintiff must prove such allegation and is not entitled to recover in the absence of such proof. We do not think, under such pleadings, a plaintiff is entitled to recover regardless thereof, and to dispense with the necessity of proving such allegation merely by the fact that the evidence is such as to justify a finding that the transaction involved was interstate. To do so would, in effect, require the defendant, although facts necessitating proof that plaintiff had a permit had been alleged by the plaintiff and the issues thereon made by the defendant's answer, nevertheless to allege and prove that the transaction involved in the suit was in fact intrastate.

We think the original opinion correctly disposed of the case. Therefore, the motions of plaintiff-in-error and defendant-in-error for a rehearing are overruled.