## THOMAS McGINNISS *vs.* EDWIN PURRINGTON.

*P* and *D* entered into a contract by which *P*, in consideration of certain advantages to his adjoining property and two hundred dollars to be afterwards paid in cash, agreed to convey a certain building lot to *D*, and *D* agreed to erect a dwelling house thereon; *D* to forfeit all claim if the contract was not fully performed by him. *D* began to erect the house, but after building the cellar wall abandoned it. Held that a mason who had built the cellar wall under contract with *D* could not establish a lien, as a subcontractor, upon the lot as against *P*.

BILL to foreclose a builders' lien; brought to the Court of Common Pleas of New Haven County and tried before *Robinson, J.* The court found the following facts:

On and for some time before the 8th day of September, 1873, the respondent owned a tract of land in the town of Orange in New Haven County, of which the land sought to be foreclosed is a part, and on that day made the following contract with William P. Dillon, a builder, the contract being executed under seal by them both.

"This agreement, made this 8th day of September, 1873, at the city of New Haven, between Edwin Purrington and William P. Dillon, both of said city, witnesseth, that the said Purrington, in consideration of $800 to him paid by the said Dillon, (the receipt whereof is hereby acknowledged,) and in further consideration of the promise of the said Dillon hereinafter contained, doth hereby promise and agree, to and with the said Dillon, that immediately upon the faithful performance of the said agreement hereinafter made, he, the said Purrington, will, on or before the first day of January, 1874, make and deliver to the said Dillon a good and sufficient warranty deed, containing the usual covenants in such deeds contained, of a tract of land situate in Allingtown, in the town of Orange, in New Haven County, and bounded, [describing it.] In consideration whereof the said Dillon doth hereby promise and agree to and with the said Purrington, that he will, on or before the said first day of January, 1874, pay to the said Purrington the further sum of $200, in addition to the payment already made, being the balance of the purchase money hereby agreed upon for said tract of land, in manner and form as follows, viz: said two hundred dollars to be by note payable one year from date, and to be secured on said land by a second mortgage, (the first mortgage not to exceed two-thirds the value of the land and improvements.) And it is further understood and agreed between the said parties that the said Dillon shall, on or before said 1st day of January, 1874, build, construct and complete a house on said above described lot, together with a fence around said lot, and all the appurtenances and modern improvements

necessary to render said house a first-class residence. The materials, workmanship, and value of the same, to be equal to that of the house now occupied by William A. Hine, on premises known as No. 805, Howard Avenue, in said city of New Haven. Said house to be in its external shape, coloring, finish and design, similar to the house above designated. And it is further agreed that if the said Dillon shall fail to make the several payments, or any of them, or perform the said agreements and promises as herein before stated, he shall forfeit all claim to the premises described herein, and all moneys paid in pursuance of this agreement. In testimony whereof, &c."

The $800 mentioned in the agreement was not intended to be paid in money, but the benefit derived by the respondent in the improvement of his other land by the building of the house on the lot contracted for by Dillon was to be taken by the respondent as a payment of the $800. The building lot in question was then worth $1,000. The contract was drawn by the respondent, who is a counsellor at law.

Immediately after the agreement was made Dillon contracted with McGinniss, with the knowledge of the respondent, for the building of the cellar of the house, and the respondent, Dillon, and McGinniss went upon the land and staked out the cellar.

McGinniss completed the cellar, and while it was being built the respondent came once or twice on the land

After the cellar was built Dillon failed and has never built the house, taken a deed from the respondent, or paid McGinniss.

There is due from Dillon to McGinniss, under the contract, the sum of $248.60.

Within sixty days after McGinniss began the cellar he gave the respondent notice that he should claim a lien on the land, and within the time required by law filed his certificate of lien.

Upon these facts the petitioner claimed that the law was so that he was entitled to recover under his petition, on the

ground that the respondent was really a contractor with Dillon for the building of the house, and that the house when built was to be the house of the respondent, and that the legal relation of the parties was such that a lien would lie and could be foreclosed upon the land.

The court overruled his claim, and decided that the land in the hands of the respondent was not subject to the lien, to which the petitioner excepted.

The court having dismissed the petition, the petitioner brought the record before this court by a motion in error.

*W. B. Stoddard* and *T. J. Fox*, for the plaintiff in error.

1.  The statute, which alone is to determine the question controverted, is broad enough to include our case. It says, "Every dwelling house or other building, with the land on which it stands, shall be subject to liens," &c. There is no exception whatsoever. Revision of 1866, p. 549; Gen. Statutes, 1875, p. 551.

2.  The written agreement between Dillon and the respondent, is a contract to build a house, in addition to its being a bond for a deed. The house, if not completed, or if the remaining $200 is not paid by Dillon, becomes the property of the respondent. It is only by performing his contract fully that Dillon becomes the owner of the property. In construing the writing, the court will bear in mind that Purrington drew it, and it should be construed strongly against him. *Lockwood v. Jones*, 7 Conn., 436. If it is a contract between Dillon and the respondent to construct a house for the latter there can be no question but that we are entitled to our lien.

3.  The respondent, by entering into this written agreement with Dillon to construct the house, and by his actions in the matter, has authorized Dillon to build a house upon his land, in such a manner that we who furnished the materials and did the work are entitled to our lien. *Woodward v. Leiby*, 36 Penn. S. R., 441; *Monroe v. West*, 12 Iowa, 119; *Rollins v. Cross*, 45 N. York, 768; *Mulrey v. Barrow*, 11 Allen, 152; *Hilton v. Merrill*, 106 Mass., 529.

4. The respondent entered into this contract with Dillon, allowing him to contract with McGinnis, and went so far as to show McGinnis where to dig the cellar, and has never notified McGinnis that he had no right to claim a lien on the land, although McGinnis gave him the usual notice that he should look to the land. for his pay. The respondent is therefore estopped from denying our lien. *Higgins* v. *Ferguson,* 14 Ill., 269; *Donaldson* v. *Holmes,* 23 id., 85; *Weber* v. *Weatherby,* 34 Maryl., 656; Phillips on Mech. Liens, § 76.

*J. W. Alling,* for the defendant in error.

FOSTER, J. We perceive no grounds on which this claim for a lien can be supported.

It is true, as the plaintiff claims, that the language of the act of 1855, under which this application is brought, is very broad. It cannot however have been intended to create a lien against a party who has not, directly or indirectly, contracted for the work, and so become liable to pay for it.

It is not claimed that the plaintiff had a contract with the defendant, or that he has any claim against him. The claim is against Dillon, and through him a lien is claimed on the land. The conclusive answer to this claim is, that Dillon has not, and never has had, any claim at all against the defendant. It is idle to talk about the claims of a sub-contractor, when there is no contract between the principal parties which makes a sub-contractor possible. There is no debt due from the defendant to Dillon, so far as this record shows; there has been none, from the beginning to the end of their dealings together. It can hardly be contended that a lien can be attached to a man's land to secure a claim which he was under no legal obligation to pay, and which could never be enforced, personally, against him by any person whatever. Dillon perhaps had some incipient rights, in equity, to this land, but those rights never ripened into a full, equitable title. Dillon was never a contractor to erect a building for the defendant, nor would the defendant have been its owner had one been erected.

It is just and equitable that the plaintiff should be paid his debt, but not just that it should be collected, or fastened as a lien on the land, of one who does not owe it.

There is no error in the judgment below.

In this opinion the other judges concurred.