GALVESTON EXHIBITION ASSOCIATION ET AL. y. A. J. PERKINS ET AL.

No. 2990.

1.  **Material Man's Lien—Statute Construed.**—Under the statutes of this State no person other than the owner or proprieter, his agent, trustee, contractor, or contractors, can make contracts fixing lien upon lands, houses, or other improvements. Sayles' Civil Stats., art. 3146; Gen. Laws 1889, p. 110.

2.  **Same—Contract to Purchase Land.**—It seems well settled that a person in possession of land under a written contract to purchase is not, within the meaning of the statutes providing liens for mechanics, etc., the owner of the land or the improvements he may place upon it, and for this reason he can not fix lien on either the land or improvements.

3.  **Contract Construed.**—March 15, 1889, the owners of the land upon which the appellees sought to fix liens for material furnished for improvements thereon, contracted with the Galveston Exhibition Association to make it a deed for the land if it should pay them $14,000 by June 30 of same year, it having paid cash $10,000, the association to have possession, but upon failure to pay at time specified the contract to become void and the advance payment should be forfeited. The association entered upon the land, made improvements, but failed to complete the purchase. The vendors resumed possession. *Held,* that the contracts by the association for material, etc., for improvements did not constitute liens upon the land against the owners.

4.  **Same.**—The parties furnishing material and performing labor upon the exhibition grounds could have secured their right to liens claimed had they paid the owners the balance of the purchase money by the time specified.

5.  **Stockholders and Corporation.** — That the vendors of the land were stockholders of the association, or its directors, would not affect the status of the land as between the corporation, the material men, and the owners of the land.

6.  **Contract Construed.**—After June 30, 1889, the day fixed for the payment of the purchase money, one of the owners conveyed his interest to the other owners, and in his conveyance the contract with the association was referred to and the vendees assumed the obligation of their vendor created thereby, whatever it might be. *Held,* the purpose of the vendor was to protect himself against any possible obligation, and not to create new ones.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion contains a statement.

*Willie, Mott & Ballinger, Scott & Levi* and *Davidson & Minor,* counsel for Leon & H. Blum Land Company, Island City Savings Bank, Henry Rosenberg, J. E. Wallis and Galveston Exhibition Association.—1. The court erred in rendering the judgment which was rendered in this cause, in this: That under the pleadings a material and necessary fact to be established by the evidence and found as the basis of the judgment was, that the Galveston Exhibition Association, at the time of making the contracts under which the plaintiffs and intervenors claim their rights, or thereafter, became the owners of eighty acres of land in plaintiffs' petition described, and there was no proof of such fact, but on the contrary the undisputed and only evidence relating to the ownership of the said eighty acres at the time aforesaid showed that the Gal-

veston Exhibition Association was not the owner of the said eighty acres, but was only in possession thereof as the tenants of the true owners, with the privilege according to the lease under which they held possession to acquire the ownership thereafter by purchase, which privilege it was not shown the Galveston Exhibition Association ever availed itself of.

2. The court erred in rendering the judgment which was rendered in this cause, for that the contracts under which the plaintiffs and intervenors claim their rights as lien holders were made, not with these defendants or those under whom they claim as the true owners of the land described in the plaintiff's petition, but was made merely with their tenant without the privity of the landlord, and because it was not competent for the tenant to fix a lien upon the property of its landlord without the consent of the landlord given thereto. Overton on Liens, secs. 537, 535, 536, 542; Jones on Liens, secs. 1245, 1247, 1278, 1253.

3. In the contract with the owners the Galveston Exhibition Association did not become the equitable owner of the property, but only acquired the right to become such equitable owner upon the payment of the amount stipulated. Until such payment was made they had no equity of ownership, and were simply the tenants of appellees.

4. A party entitled to acquire an equity upon the performance of conditions can not make a contract which will subject the estate of the legal owner to a lien. Jones on Liens, secs. 1243–1245; Rollin v. Cross, 45 N. Y., 766; Wagner v. Briscoe, 38 Mich., 587.

5. A party in possession of land under a verbal or written contract of purchase can not subject the realty or the improvements to a mechanics' lien to the prejudice of the owner. Jones on Liens, secs. 1247, 1248, 1249.

*Henry J. Labatt,* for appellees.—1. There was no error of the court as recited in the first assignment of error. There was no variance between the *allegata* and *probata* as to the ownership in the Galveston Exhibition Association of the eighty acres mentioned in the pleadings. Nor was there proof that the Galveston Exhibition Association was not the owner of the said real estate. Keating v. Electric Light Co., 74 Texas, 605; Monroe v. West, 12 Ia., 119; Stockwell v. Carpenter, 27 Ia., 119; Nazareth Lit. and B. Inst. v. Lowe, 1 Ky., 258; Hickox v. Greenwood, 94 Ill., 266; Davis v. Humphreys, 112 Mass., 309; Phillips on Mech. Liens, 1 ed., sec. 69, p. 100; Jones on Liens, secs. 1249, 1251, 1254.

2. There was no error of the court as set forth in the second assignment of errors. The instrument offered in evidence was a bond for title with possession, and not a lease, and the Galveston Exhibition Association certainly was not in possession of the lands as tenants of the true owners. This bond for title and possession showed ownership for the purpose of enforcing the liens of these appellees. This assignment

of error asserts that the Galveston Exhibition Association was only in possession of the said eighty acres with the privilege, according to the lease under which they held possession, to acquire the ownership thereafter by purchase, which privilege it has not shown the Galveston Exhibition Association ever availed itself of. Roeder v. Robson, 20 Texas, 765; Scarborough v. Arrant, 25 Texas, 129; Hickox v. Greenwood, 94 Ill., 266; Davis v. Humphrey, 112 Mass., 309; Monroe v. West, 12 Ia., 119; Stockwell v. Carpenter, 27 Ia., 119; Jones on Liens, secs. 1249, ·1251, 1254.

3. There was no error in the court rendering judgment, "because the contracts under which appellees claimed their rights as lien holders were made merely with the tenant of the true holders without the privity of the landlord, or because it was not competent for the tenant to fix a lien upon the property of its landlord without the consent of the landlord given thereto," as assigned in the third assignment of error; because there is not an allegation in the pleadings of appellants or a particle of proof that the instrument was a lease, but on the contrary that it was a bond for title and is still in force and effect, and that those who are styled landlords were directors and stockholders in the association, called tenants, and privy to all the contracts sued on. Rollin v. Cross, 45 N. Y., 766; Weber v. Weatherby, 34 Md., 656; Philips on Liens, sec. 75, p. 110; Jones on Liens, secs. 1243, 1251, 1254; Overton on Liens, sec. 571, p. 595.

STAYTON, CHIEF JUSTICE.—A. J. Perkins & Co. filed their petition in the District Court of Galveston County on the 19th of August, 1889, against the Galveston Exhibition Association, the Leon & H. Blum Land Company, the Island City Savings Bank, May & Wainwright, B. Blum & Co., Henry Rosenberg, Joseph E. Wallis, Edward D. Garratt, and M. P. Hennessy, alleging that the Galveston Exhibition Association was indebted to them on open account in the sum of $2003.58 for work and labor done and materials furnished for certain improvements on 10-acre outlots 101, 102, 103, 104, 126, 127, 128, 129, in the city of Galveston, commonly known as the "Fair Grounds," and sought a foreclosure of alleged liens thereon. The petition alleged that the Leon & H. Blum Land Company, the Island City Savings Bank, Henry Rosenberg, Joseph E. Wallis, and Edward D. Garratt claimed or pretended to claim some interest in the said real estate, and upon this allegation of interest they were made defendants. The petition also alleged that May & Wainwright, B. Blum & Co., and Edward Ketchum claimed liens upon the same property; and that the defendant M. P. Hennessy had seized under a judgment some of the material upon which plaintiffs claimed lien and had sold the same, and sought judgment against him for $150, the alleged value.

All the persons alleged to claim liens came in and asserted them, these claims being similar in character to that asserted by plaintiffs.

The Galveston Exhibition Association, a private corporation, answered by demurrers and a general denial of the claim of plaintiffs and of Ketchum. All the other defendants answered by demurrers and general denials of all facts alleged other than their claims of interests in the property on which liens were claimed.

The case was tried by the court without the intervention of a jury and judgment rendered in favor of A. J. Perkins & Co. against the Galveston Exhibition Association for $2039.63; in favor of Edward Ketchum against the association for $673.70; in favor of May & Wainwright for $775.45; in favor of B. Blum & Co. for $184.86, and adjudged the same to be prior liens on all the buildings,. erections, or improvements on outlots 101, 102, 103, 104, 126, 127, 128, and 129, in the city of Galveston, and ordered the same sold and the money applied pro rata to the payment of the judgments. Without ascertaining or decreeing that the Galveston Exhibition Association had any right or title in the real estate whatever, the court went on to decree that the said judgments were liens on all the right, title, interest, or claim which the said Galveston Exhibition Association held between the 28th day of June, 1889, and the 28th day of July, 1889, in and to said lots of land, and also ordered all the title, interest, and claim which the Galveston Exhibition Association held in and to said lots to be sold. It also gave judgment against the defendant Hennessy for $150.

Whatever right the Galveston Exhibition Association had in the property described in the petition is based on the following instrument:

"*State of Texas, County of Galveston.*—Know all men by these presents, that we, Henry Rosenberg, being the owner of seventeen seventieths of the hereinafter described property; Leon Blum, being the owner of twenty-two seventieths thereof; D. The. Ayers, being the owner of twenty-one seventieths thereof, and the Island City Savings Bank, a body politic and corporate. under the laws of the State of Texas, being the owners of ten seventieths thereof, do hereby promise and obligate and bind ourselves unto the Galveston Exhibition Association, that upon the performance by the said association of the covenants hereinafter agreed upon, that we will, upon a reasonable request of the said Galveston Exhibition Association, at any time after the 30th day of June next, the said association having complied with its covenants, at our own proper cost and charge, execute, acknowledge, and deliver, or cause to be executed, acknowledged, and delivered, a deed or deeds of conveyance such as will be sufficient to convey, assure, and confirm to the said Galveston Exhibition Association, its successors and assigns, a good and absolute and indefeasible estate of inheritance in fee simple, clear of all incumbrances, of and in the following premises and prop-

erty, to-wit:  All those certain tracts or parcels of land lying and being situate in the county of Galveston and State of Texas, namely:  Out-lots Nos. 101, 102, 103, 104, 126, 127, 128, and 129, according to the map or plan of the Galveston City Company, of the city of Galveston, together with all the buildings and improvements of every kind and description upon said premises.  The condition of the above obligation is such that whereas the said Galveston Exhibition Association has paid to us the sum of $10,000 cash, and has agreed to pay us the additional sum of $14,000 on or before the 30th day of June, A. D. 1889; now if the said Galveston Exhibition Association shall well and truly pay us the said sum of $14,000 on or before the 30th day of June, A. D., 1889, then the above obligation is to remain in full force and effect; but if the said association fails to pay the said sum of $14,000 on or before the 30th day of June, A. D. 1889, then this obligation is to become null and void and of no force or effect, and the said association shall forfeit the said sum of $10,000 already paid by it, and no part thereof shall be refunded or repaid to the association.

We further agree that as a part of the consideration of the said sum of $10,000 already paid to us that we do permit and suffer the said Galveston Exhibition Association peaceably and quietly to enter upon, hold and enjoy said premises until the said 30th day of June, 1889, without let or hindrance on our part.

Witness our hands this 15th day of March, A. D. 1889.

                    THE ISLAND CITY SAVINGS BANK,
                         N. WEEKES, Cashier,
                         H. ROSENBERG,
                         D. THE. AYRES,
                         THE LEON & H. BLUM LAND CO.,
                             Per LEON BLUM.

Witnesses:  T. Evans, S. G. Selkirk, W. J. Frederich, C. G. Sweet, C. G. Sweet, J. W. Burson, B. F. Caston, E. de Normandie.

The Exhibition Association was in possession of the premises from the latter part of March, 1889, until about the 10th of July, 1889.  After the 10th of July, 1889, the defendants Rosenberg, Wallis, Garratt, Blum Land Company, and Savings Bank, took possession of the property and have held it ever since.

The material alleged to have been furnished and labor performed on which liens are claimed was furnished and performed while the Galves-ton Exhibition Association was in possession under the instrument above set out.

The material question presented by the first, second, and third as-signments of error is, did the Galveston Exhibition Association have any interest in the property that would enable it to fix liens on it such as are sought to be established and enforced in this case? for there can

be no claim that the persons who executed the instrument before set out ever made any contract with any of the persons claiming liens. All such persons must be held to have known the extent and character of the interest or right of the association.

Under the instrument it would have been the right of the association, on payment of the $14,000 within the time prescribed, to have title, for the instrument binds its makers to convey on compliance by the other party with its terms. It did not evidence a mere lease, but gave to the association the right to acquire title and in the meantime the right to occupy it. The instrument on its face, however, provided that it should cease to confer such a right if the sum named was not paid on or before June 30, 1889. Parties have the right to make such contracts, and it is the duty of a court to confirm them as made. The instrument then evidences an agreement to convey the land described in it, but there is no claim that the association ever made the payment that would have entitled it to a conveyance.

The land continued to be the property of the makers of that instrument, or of persons claiming under them, and as there was no agreement that the association should have the right to remove the improvements made on the land, or hold the same as a property distinct therefrom, it must be held that title to all improvements made on the land became the property of its owners. Dustin v. Crosby, 75 Me., 75; Jones on Liens, 1247; Phillips on Mechanics' Liens, 186. No facts are shown that would vary this general rule, nor does it even appear that the material used and labor done were not applied to the repair or enlargement of improvements existing when the contract was made. That they would so become if the payment was not made by the association, those now asserting lien must be held to have known. Jones on Liens, 1247–1252. Under the statutes of this State no person other than the owner or proprietor, his agent, trustee, contractor, or contractors, can make contracts fixing liens on lands, houses, buildings, fixtures or improvements such as are asserted in this case. Sayles' Civ. Stats., art. 3146; Gen. Laws 1889, p. 110.

That the persons claiming liens made contracts with any such persons is not claimed, and the only contracts on which they base their rights were made with the Galveston Exhibition Association. It seems to be well settled that a person in possession of land under a written contract to purchase is not, within the meaning of such statutes as those under which the persons claiming liens assert rights, the owner of the land or of the improvements he may place upon it, and for this reason can not fix lien on either. McGinnis v. Purrington, 43 Conn., 143; Scales v. Griffin, 2 Douglass, 54; Hayes v. Fessenden, 106 Mass., 228; Wagar v. Briscoe, 38 Mich., 587; Hickox v. Greenwood, 94 Ill., 266; Wilkins v. Litchfield, 69 Iowa, 465; Walker v. Burt, 57 Ga., 21. The makers of the instrument in question continued to be the owners

of the property, and improvements made thereon became a part of it and theirs as fully as was the land, and the association never having acquired title or right thereto within the period prescribed, certainly could not incumber it with liens. If the association had acquired an interest in the property that interest might be incumbered by it with liens which ought to be enforced to the extent of the interest, but under the contract all the right or interest, other than a possessory right limited to a fixed period passed, it ever acquired was the right to pay the sum stipulated within the time prescribed and thus become entitled to a conveyance of the fee, but this right could not be kept in existence even for the protection of persons with whom it had made contracts in violation of the agreement which conferred all the right it had. If persons now asserting liens had in proper time paid the balance of the purchase money we see no reason why they might not enforce all lawful liens growing out of any contracts they may have made with the association, but that never was done.

It seems to be urged that the owners of the property are bound by the contract of the Galveston Exhibition Association because they became stockholders therein, and some of them perhaps directors, but this can not make the contracts of the association their contracts; and under such a statute as that in force in this State the mere fact that the owners of the property acquiesced or even consented to the furnishing of material to be used on the premises, or to the performance of labor, could not fix liens on the property. It would be different if the statute made the consent of the owner, and not his contract, the basis for liens. Jones on Liens, 1251.

After June 30, 1889, two of the present owners of the property bought the interest of one of the makers of the instrument before referred to, and in the conveyance to them the contract is referred to and the vendees assumed the obligation of their vendor created thereby, whatever that might be; but this could not give life to the liens the association could not create. Such evidence would tend to show that the vendor may have thought that the instrument then still imposed upon him some obligation, but his purpose was evidently to protect himself against any possible obligation and not to create new ones.

We are of opinion that the claimants of the liens do not show facts entitling them to have sold in payment of their claims any of the improvements on the lands described in the petition, and that as the Galveston Exhibition Association has no interest whatever in the property, no sale of either improvements or lands, or supposed interest therein, should be directed to be made, for the effect of such a sale under decree would but tend to cloud the title of the real owners. The judgment against Hennessy was also unauthorized. Whether facts existed to give liens to all the claimants had the Galveston Exhibition Association been

the owners it is unnecessary to consider, in view of the other questions considered.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February·27, 1891.

*Henry J. Labatt*, for appellees, argued a motion for rehearing. The motion was refused.