**McCALLEN et al. v. MOGUL PRODUCING & REFINING CO. (No. 8365.)***

(Court of Civil Appeals of Texas. Galveston. Nov. 23, 1923. Rehearing Denied Dec. 20, 1923.)

**1. Appeal and error ⬅1071(1)—Failure to file findings and conclusions not reversible error where statement of facts embraces entire evidence.**

Mere failure to file findings of fact and conclusions of law on request will not always work a reversal, especially where the complaining party was not injured, as where the statement of facts embraces the entire evidence.

**2. Trial ⬅392(4)—Failure to file findings not error where not called to court's attention.**

Failure to file findings of fact and conclusions of law is not error where the motion therefor was never called to the court's attention.

**3. Mechanics' liens ⬅61, 173—Cannot be established against landowner without his knowledge or consent.**

A contractor's and materialman's lien relates back to the inception of the contract, and the time when the first material was furnished. as against the immediate parties to, or those having prior notice of, the contract, but cannot be established against the landowner without his knowledge or consent, nor predicated on a mere executory contract of purchase between others.

**4. Mechanics' liens ⬅199—Materialman not paying owner's indebtedness to vendor before sale under trust deed securing it cannot assert priority of lien.**

A materialman's lien claimant not paying to the owner's vendor the balance of the purchase money secured by a trust deed before the property was sold thereunder cannot assert that the vendor's lien should be postponed to its claims.

**5. Mortgages ⬅151(3)—Oil refinery held part of realty passing to purchaser at sale under trust deed.**

An oil refinery *held* part of the realty on which built, so as to preclude enforcement of a materialman's lien after the property was sold under a trust deed.

**6. Appeal and error ⬅931(3)—Finding necessary to support judgment deemed made if supported by sufficient evidence.**

A finding necessary to support a judgment by a court sitting without a jury will be deemed made if there was sufficient evidence to support it.

**7. Mechanics' liens ⬅185—Lien for materials insufficiently identified, used in structures already on premises, or not detachable without injury to freehold, not enforceable.**

Where materials furnished by a lien claimant for use in construction of a building were not so identified as to be susceptible of segregation from materials supplied by others, with the exception of some used in the repair and improvement of structures on the premises

when the contract was made, or not detachable without injury to the freehold, a lien therefor cannot be enforced.

**8. Mortgages ⬅393—Sale under trust deed to secure purchase-money notes after alleged extension of vendor's lien held not voidable.**

In the absence of evidence of such mutuality of agreement to extend a vendor's lien as bound vendor to carry it for a fixed time, and the vendee to pay the interest for that period, the court did not err in not finding a sale of the property under a trust deed securing the purchase-money notes voidable at the instance of a materialman's lien claimant.

**9. Joint-stock companies and business trusts ⬅19—Sale under trust deed securing notes of business trust to certain trustees held not voidable in absence of verified pleadings.**

A sale under a trust deed duly executed in good faith by officers of a business trust to secure notes issued to three of its seven trustees for money borrowed on their individual responsibility at a loss to themselves, and used for its own purposes, *held* not voidable at the instance of a materialman's lien claimant because the contract and mortgage were not authorized by the required number of trustees, exclusive of those to whom the notes were executed, in the absence of verified pleadings denying the officers' authority to act for it on such occasion or in subsequently ratifying the obligation.

**10. Joint-stock companies and business trusts ⬅18—Lien claimants for materials not tendering amount paid by purchaser of notes given for money borrowed by trust held not entitled to equitable relief against trust deed.**

Where liens were claimed for materials for construction of building on premises alleged to be owned by a business trust, and a trust deed of the premises had been executed by the trustees to some of their number for money borrowed, which trust deed, with the notes secured by it, were purchased by defendant, *held*, that neither the business trust nor the lien claimants were entitled to equitable relief against such trust deed as unauthorized, where the trust received the benefit of the amount for which the notes were given, and renewed its obligation to pay, when defendant bought them, in consideration of an extension of time, and no tender was made to defendant of the amount paid by it for the notes, though it demanded and offered to accept such payment.

Error from District Court, Harris County; W. E. Monteith, Judge.

Action by H. McCallen against the Mogul Producing & Refining Company and others, in which the Burton Lumber Company and others intervened. Judgments for defendants against plaintiff and interveners, except the Lumber Company, and for the latter in part, and plaintiff, the Lumber Company, and other interveners bring error. Affirmed.

Baker, Botts, Parker & Garwood, Stevens & Stevens, and Rodman S. Cosby, all of Houston, for plaintiffs in error.

Bryan, Dyess & Colgin, of Houston, for defendant in error.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Appeal of Crescent Oil & Refining Co. dismissed for want of jurisdiction February 6, 1924.

GRAVES. J. This litigation began with the suit of H. McCallen against the Crescent Oil Refining Association, alleged to be operating under a declaration of trust, with its principal place of business in Houston, Tex., declaring upon a debt for some pipe and personal services aggregating about $2,200 claimed to have been furnished the association by him. He charged that the association owned 20 acres of land near the San Jacinto battlefield, in Harris county, upon which it had attempted to build an oil refinery, and that his material had been used in the construction thereof, by reason of which he asserted a lien upon the property in security for it, as well as for his unpaid salary. He further charged that the Mogul Producing & Refining Company was claiming some kind of lien upon the property, and, in conjunction with the officers of the association, was attempting to foreclose the same to his detriment. He prayed for judgment for his debt, establishment of his lien, and interlocutorily for the appointment of a receiver for the association, under averments that through the collusion alleged the interests of stockholders and creditors would be ignored; that the association owed part of the purchase money for the land on which its refinery was located, which was subject to a vendor's lien thereon; that it was in great danger of insolvency, and had stopped work on its refinery, etc.

Subsequently McCallen amended his petition, making the Mogul Producing & Refining Company a party to the suit, setting up substantially the same things as before, and, in addition, alleging that the association was organized September 20, 1919, with five trustees whose number was subsequently increased to seven by amendment of the articles of association, two-thirds of whom, if acting at a meeting called for that purpose but not otherwise, might borrow money on behalf of the organization and mortgage its property in security; that the lien claimed by the Mogul Company was invalid and void, because it was created at a meeting on January 27, 1920, called for the purpose of making a loan on the defendant association's assets, of six out of seven of its trustees, whereby they attempted to issue to three of their number, to wit, E. W. Love, E. C. Smith, and H. L. Patton, its two notes for $12.500 each, and to deliver to a trustee for them, H. G. Smith, as security therefor, a deed of trust upon the association's entire assets, including its 20 acres of land and the refinery thereon located, which could not be legally done, as the three named trustees could not act both for themselves individually and for the beneficiary, the Crescent Association; that the Mogul Company had acquired these two notes and the deed of trust securing them by transfer from the three trustees referred to, and was attempting to foreclose its alleged lien so originating; he prayed as in his original petition, and further asked for an injunction restraining the Mogul Company and H. G. Smith, the trustee under the deed of trust it so held, from selling the property.

Into the cause thus having its inception, there came at different times the interventions of (1) J. M. Hubert and others (2) the Burton Lumber Company, and (3) the answer and cross-action of the Mogul Producing & Refining Company.

A résumé of the more important averments of these intervening proceedings may be made as follows:

(1) Hubert and his numerous associates sued, on July 3, 1920, for themselves and all others similarly situated as creditors or stockholders of the association, alleging the invalidity of the deed of trust lien so created at the January 27, 1920, meeting of the Crescent Association's trustees, which had been transferred to the Mogul Company, charging that a substitute trustee thereunder was then about to sell the Crescent's property to satisfy the two notes it secured, and praying for an injunction against the sale and for a receiver for the Association's properties. Subsequently, on October 6, 1920, this petition was amended, others made themselves parties to it, and the Crescent Oil Refining Association joined therein for the purpose of bringing a cross-action against the Mogul Producing & Refining Company; the amended plea complained affirmatively against the Mogul Company, setting up against it on behalf of the Crescent Association the usual allegations in trespass to try title with reference to the 20 acres of land involved, claiming it as the property of the latter, and alleging its value to be $150,000. The pleading further charged that on August 3, 1921, there had been two sales of the property, at both of which the Mogul Company had been the purchaser. First, one by H. G. Smith, trustee, acting at the instance of the Mogul Company, under the deed of trust of January 27, 1920, securing the two $12,500 notes to Love et al.; second, one by W. S. Hunt, trustee, acting at the instance of J. H. Smith under a deed of trust given on February 3, 1920, to secure $16,000 of unpaid purchase-money notes on the 20 acres of land due J. B. Hine and Nellie B. Mills, which notes and trust deed were then owned by Smith, and carried a vendor's lien on the property superior to the one of January 27, 1920, just referred to; that both of these sales of August 3, 1921, were invalid and void, the first one because the Mogul Company knew at the time it purchased the two $12,500 notes of the limitation on the power of the trustees of the Crescent Association, as contained in its declaration of trust,.to procure the loan and create the deed of trust lien on its property, which limitation had been transcended in the manner before set out; and the second one because J.

H. Smith, who had acquired from Hine and Mills the superior vendor's lien notes against the property and the deed of trust securing them, had agreed to extend these notes and postpone to a later date the deed of trust sale, but had violated that agreement, and had, without the knowledge and in the absence of the officers of the Crescent Association, caused it to be made. The prayer was that the two deed of trust sales be set aside, and that the Crescent Association have judgment for the title and possession of the property.

(2) The Burton Lumber Company filed its amended intervening pleading on October 18, 1921, complaining of the Crescent Association and the Mogul Company, and declaring upon an account against the former for $1,908.08 for lumber and building material alleged to have been furnished to and used by it on the property in controversy, the first item of which was so furnished on November 18, 1919, the last one on March 23, 1920, and asserting a statutory materialman's lien on the properties of the association, which it specifically averred was prior and superior to any lien or claim held by the Mogul Company by reason of having filed its affidavit and account showing such material to have been so furnished by it in the office of the county clerk of Harris county on the 19th day of July, 1920, or within less than four months after furnishing the last item thereof. The lumber company further made common cause with J. M. Hubert and his associates in attacking the validity of the lien claimed by the Mogul Company under its deed of trust of January 27, 1920, and also adopted the allegations of their amended petition to the effect that the sale of August 3, 1920, by trustee W. S. Hunt, was void because the indebtedness secured by the trust deed he acted under had been validly extended by agreement. Its prayer was that the two deed of trust sales on August 3, 1920, be set aside, and that it have judgment for its debt with foreclosure of its lien, etc.

(3) On October 14, 1921, the Mogul Company filed its second amended answer and cross-action, denying all the material allegations of the interveners, replying that the Crescent Association had borrowed from Love, Smith, and Patton and used in paying its debts and improving its plant the $25,000 called for in the two $12,500 notes, had duly originally authorized its trustees to execute them and the deed of trust securing them, and subsequently, after so receiving and using the $25,000 realized therefrom, had affirmed and ratified the obligations; that it (the Mogul Company) thereafter became a bona fide purchaser of the notes and mortgage for full face value, without notice of any irregularity in the execution thereof, whereby the Crescent Association and other interveners, after so receiving the benefits thereof, were estopped to deny the validity of the notes and accompanying lien; that even up to the day of this trial no offer or tender had ever been made by any of them to it of the $25,000 it had paid out for the two notes, although it had at all times been willing to accept the same and release its claims; that the alleged extension agreement made with J. H. Smith as the owner of the vendor's lien notes acquired from Hine and Mills was without consideration, not known to it, and therefore not binding on it. At much length the regularity and validity of both sales made on August 3, 1920, was then asserted.

By its subjoined cross-action, the Mogul Company further declared in trespass to try title against all of the interveners that it was the rightful owner of the 20 acres of land, and prayed that the court so declared by adjudging that absolute title to the property passed to it by each of the sales of August 3, 1920.

In a separate answer to the Burton Lumber Company's intervention, it denied that company's claim to a lien, charged that it had never offered to pay the Mogul's investment in the two notes of the Crescent concern, and therefore was entitled to no relief in equity. It further averred that, if the Burton Company had furnished the Crescent any material, it had been so mixed and mingled with that supplied by other materialmen as to be no longer susceptible of identification or separation therefrom, and hence could not be the subject of an enforceable materialman's lien.

There were also several supplementary pleadings, but, as they did not materially change the issues raised by those described, no further reference is made to them.

At the close of the trial, by agreement, the issues involved in the Burton Lumber Company's intervention were withdrawn from the jury to be determined by the court independently, and then, at the request of the Mogul Company, the court instructed a verdict against the plaintiff, McCallen, the intervener Crescent Oil Refining Association, and all other interveners and parties, except the Burton Lumber Company, on their suits against the Mogul Producing & Refining Company, and in favor of the latter company on its cross-action against all the other litigants, except the Burton Lumber Company; verdict in conformity was duly returned.

Judgment followed denying all relief asked for by the plaintiff and interveners, other than Burton Lumber Company, and vesting title to the land against all other parties in the Mogul Producing & Refining Company. The Burton Lumber Company was awarded a recovery against the Crescent Refining Association on its debt, but was refused any lien on the property.

The court specifically found that the two trustees' deeds issued by them pursuant to

the sales to the Mogul Company of August 3, 1920, were valid, and that the deed of trust on which the first of them rested, that is, the one of January 27, 1920, to H. G. Smith, trustee, was the act of the Crescent Association, duly ratified by it, which fact it was estopped to deny.

From the judgment so entered H. McCallen, the Burton Lumber Company, Crescent Oil & Refining Association, D. T. Morris, C. F. Stevens, and J. B. Richardson have sued out this writ of error, making the Mogul Producing & Refining Company defendant therein.

No complaint is made in this court over the failure of the original plaintiff below to at least obtain a recovery for the amount he sued for against the Crescent Association; indeed, it appears not to have been proven up; but plaintiffs in error file joint briefs here, and make what may be condensed into three general contentions:

(1) "In view of the agreed withdrawal from the jury of the issues between the Burton Lumber Company and the remaining litigants, the court erred in failing to file conclusions of fact and law. as requested by the lumber company.

(2) "The Burton Lumber Company had both a constitutional and a statutory contractor's and materialman's lien on the improvements erected on the land belonging to the Crescent Company, and the Mogul Company had notice of this lien before purchasing the second lien indebtedness, and the court erred in not so finding, and in not ordering a foreclosure in favor of Burton Lumber Company against the improvements on the land, and holding its lien prior to the second lien indebtedness."

(3) A. "The court erred in not holding the sale under the second lien indebtedness (that is, the one through H. G. Smith, trustee) at least voidable, because said indebtedness was created at a meeting of the trustees of the Crescent Company, and the loan was made by three of the trustees to the company, the notes being made to the trustees, as individuals, and under such circumstances the entire transaction was at least voidable, if not void; the trustees could not serve two masters, that is, they could not represent themselves and the Crescent Company simultaneously; the evidence further showing that the Mogul Company had notice of the manner in which said indebtedness arose."

B. "The court erred in not finding the sale under the first lien indebtedness (that is, the one through W. S. Hunt, trustee) at least voidable, if not void, since the uncontradicted evidence shows that said sale was made after the owner of the indebtedness had agreed definitely to extend it for a fixed period and upon a valuable consideration, and not to have the property sold on August 3, 1921; the evidence further showing that the trustee knew of such extension agreement, and the evidence further showing that the parties owning an equity in the property, relying on the extension agreement, did not attend the sale and had no opportunity to bid on the property; and of all this the Mogul Company had ample notice."

[1] 1. In the circumstances appearing, no error is shown in the failure to file the conclusions of fact and law requested; while it was agreed at the conclusion of the evidence that all issues involved in the Burton Lumber Company's intervention might be withdrawn from the jury and decided by the court independently, there is a full, agreed statement of facts in the record which includes all the evidence upon that branch of the case as well as on all others; furthermore, the bill of exceptions reflecting that matter contains this qualification by the court:

"Approved with the qualification that motion for findings of fact was never called to the attention of the court."

[2] We do not understand that the mere failure to file findings of fact and conclusions of law on request will, regardless of the particular circumstances obtaining, in all cases automatically work a reversal, especially where it appears from the record that the complaining party has not been injured thereby, as is the case in this instance, since the statement of facts embraces the entire evidence received and therefore reflects upon appeal every contention it made below. Riley v. Austin (Tex. Com. App.) 245 S. W. 907. Moreover, the action of the court on the request for the findings was not properly invoked, because the motion containing it was never called to its attention. Johnson v. Frost (Tex. Civ. App.) 229 S. W. 558.

2. The claim for a lien in the lumber company as being prior and superior to both of those that came into the Mogul Company through the deeds of trust to H. G. Smith and W. S. Hunt, in addition to the previously recited contention that the latter two were invalid for the reasons assigned in that connection, rests upon a state of facts, of which this much (the recitation thereof being adopted from one of the briefs filed in this court) is undisputed:

November 18, 1919, Burton Lumber Company began furnishing the material, all of which was used by the Crescent Association in the construction of its plant on the 20 acres, and the last item was furnished March 23, 1920.

July 19, 1920, within less than four months from the date of the furnishing of the last material, the lumber company filed its affidavit and account in the office of the county clerk of Harris county, Tex.

February 3, 1920, J. B. Hine and Nellie M. Mills conveyed the 20 acres of land near the San Jacinto Battle Grounds to N. P. Lowery. While this deed is not in the record the deed of trust from Lowery to W. S. Hunt recites such fact.

February 3, 1920, N. P. Lowery, to secure four purchase-money notes payable to J. B. Hine and Nellie M. Mills, and aggregating in amount $16,000, executed a deed of trust on the property to W. S. Hunt, trustee. The

last three notes secured by this instrument matured six months after date, to wit, after February 3, 1920.

February 3, 1920, N. P. Lowery conveyed the property to Crescent Oil & Refining Company and the Crescent Company assumed the payment of the Mills and Hine notes.

January 27, 1920, the Crescent Company executed a deed of trust to H. G. Smith to secure the payment by it to E. W. Love, H. L. Patton, and E. C. Smith of two certain promissory notes for $12,500 each, maturing four and six months after date, respectively. While this deed of trust was executed prior to the time the Crescent Company got record title to the land, the instrument was not placed of record until after the deed of trust executed by Lowery to Hunt; the latter instrument being recorded in volume 174 of the Mortgage Records, and the former instrument being recorded in volume 177 of the Mortgage Records.

May 17, 1920, Love, Patton and Smith transferred the two notes for $12,500 each to Mogul Producing & Refining Company, the defendant in error herein.

August 3, 1920, Hunt as trustee under the Lowery deed of trust conveyed the property to L. R. Bryan, attorney for Mogul Company and in this conveyance recited that the notes had been transferred to J. H. Smith.

August 3, 1920, H. G. Smith, trustee under the Crescent Company's deed of trust, transferred the property to Mogul Company, defendant in error.

August 17, 1920, Bryan transferred the property to Mogul Company.

It further appears as a fact assumed to be true by both sides to the appeal apparently also being so treated throughout the trial below, that for some time prior to the Hine and Mills deed of February 3, 1920 (the inception· of which period does not appear, but which, presumably from the fact that on that date the lumber company furnished the first item of material on the property to the Crescent Association, was prior to November 18, 1919), the Crescent concern, or Lowery for it, held the property under an executory agreement with Hine and Mills to purchase it, which was subsequently consummated by this conveyance from them.

[3] Upon this situation as their premise, plaintiffs in error forcefully argue that a materialman's lien was fixed on the improvements on the land in favor of the lumber company as of date November 18, 1919, when its first item was furnished, and that it antedated and was superior to both the Hine and Mills vendors' lien and the Love et al. trust deed lien, which had their inceptions, respectively, on February 3, 1920, and January 27, 1920.

We are unable to agree with them. It is quite true, as plaintiffs in error assert, that a contractor's and materialman's lien when properly fixed, and as against the immediate parties to or those having prior notice of the contract out of which it grows, relates back to the inception of that contract and the time when the first material was furnished thereunder (Schultze v. Alamo, 2 Tex. Civ. App. 236, 21 S. W. 163; Hotel Co. v. Griffiths, 88 Tex. 582, 33 S. W. 652, 30 L. R. A. 765, 53 Am. St. Rep. 790); but in Texas it is equally well settled that such a lien cannot be established against the .owner of land without his knowledge or consent, and that a mere executory contract of purchase between others does not furnish a sufficient basis upon which to predicate it against him (Gal. Ex. Ass'n v. Perkins, 80 Tex. 62, 15 S. W. 633; Sheer v. Cummings, 80 Tex. 294, 16 S. W. 37; Harris' Const. of Texas, p. 776, § 37, subd [29], and further authorities there cited; 18 Ruling Case Law, p. 896, par. 25, and page 959, par. 99; also volume 27, p. 602, par. 351, and footnote 10).

This consideration alone defeats the claim for precedence of lien in the lumber company. Its furnishing material on November 18 of 1919· was under contract between it and the Crescent Association, whom it chose to deal with and supply as the owner of the property, and the extent and character of whose interest or right it must be held to have known; it had no relation of any sort, especially no contractual ones, with the actual owners at that time and until February 3d thereafter, Hine and· Mills; indeed, it is not shown that the latter ever had or were charged with any knowledge that such a contract existed or that such material was being furnished, despite the previously mentioned assertion of both sides to this appeal that at' the time referred to Hine and Mills had made an executory agreement to sell the land to the Crescent Association.

[4] If the lumber company had, prior to the sale by trustee W. S. Hunt to the Mogul Company, paid to its owner the balance of the vendors' indebtedness that instrument secured, it might have been in position to enforce a lien on the property as against the Crescent Association, arising out of the contract between them; but, not having done that, it cannot be heard to say that the lien of the vendors should be postponed to its claims; Gal. Ex. Ass'n v. Perkins, supra, 80 Tex. at page 68, 15 S. W. 633.

The Schultze v. Alamo, etc., Case, 2 Tex. Civ. App. 236, 21 S. W. 160, by the Austin Court of Civil Appeals, so much relied upon by plaintiffs in error, does not hold differently; there the court merely held that the subsequent acquirement of the title to real property by one who had at a prior date contracted with a materialman for material used thereon, as between them, entitled the latter, on taking proper steps to fix it, to his lien, and that it took priority over a mortgage given some months after the ma-

terial was so contracted for and partly furnished. If the case of Cameron v. Trueheart (Tex. Civ. App.) 165 S. W. 58, by the same court, does announce a different doctrine, we cannot follow it.

[5-7] Under the holdings of our Supreme Court, in the Gal. Ex., etc., v. Perkins and Sheer v. Cummings Cases, cited supra, the improvements put on the land in the circumstances here appearing became part of the realty, and as such went with the title to the soil into the Mogul Company. If, however, it could be said that this is not true, and that the lumber company should not be denied a lien on such of the improvements as its material helped to erect, pursuant to R. S. arts. 5621 and 5628, another impediment stands in the way: The evidence failed to show any such identification of the materials it had furnished as made them at the time of the trial susceptible of segregation from those supplied by others, with the exception of some roofing and window frames, and these either so went into the repair and improvement of structures already on the premises when the lumber company made its contract, or otherwise were utilized in such manner thereon, that they could not be detached without injury to the freehold; at any rate, there was sufficient evidence to support a finding to that effect, and, if necessary to support the judgment rendered, one will be deemed to have been made by the court, which tried this feature of the cause without the aid of a jury.

Under such a state of facts, as applied to the conditions otherwise shown to have prevailed here, a materialman's lien could not be enforced. Quinn v. Dickinson (Tex. Civ. App.) 146 S. W. 993; Bank v. Strauss, 29 Tex. Civ. App. 407, 69 S. W. 86.

3. The attacks upon the validity of the two trust deeds and the sale under them must fail also, we think.

[8] As concerns the vendors' lien, the evidence fails to show any such mutuality of agreement as to its extension between J. H. Smith and the Crescent Association as bound him to carry it until a fixed time, and it to pay the interest thereon for that period, but rather indicates a tentative arrangement only, and that, without any express agreement on the Crescent's part to continue paying interest at all, under which it might take up the obligation at any time, to say nothing as to whether even this understanding, for such effect as it might have, was brought home to the Mogul Company, so as to be binding on the latter, it did not constitute in law a valid extension as between the immediate parties thereto. Norris v. Graham (Tex. Civ. App.) 42 S. W. 575; Ellerd v. Ferguson (Tex. Civ. App.) 218 S. W. 605; Benson v. Phipps, 87 Tex. 579, 29 S. W. 1061, 47 Am. St. Rep. 128.

[9] When the underlying facts are gone into, there is perhaps less basis for the assault on the contract lien given to secure the two $12,500 notes. The undisputed evidence shows the utmost good faith on the part of all parties to this transaction, not only at its inception, but also upon its acquirement on May 17, 1920, by the Mogul Company; indeed, plaintiffs in error themselves pleaded this good faith as to the original execution of the mortgage. The Crescent Association, being in distress, induced its three trustees, Love, Smith, and Patton, to go out on their individual responsibility and borrow for it $25,000, which they did at an actual loss to themselves, and used every dollar of the money for its own purposes. The Association officially, by its president and secretary, duly executed its two notes for the amount so borrowed to the three trustees named as individuals, together with the trust deed for their benefit in security. In May thereafter, antecedent to and as a means of enabling its three holders to sell its obligations to the Mogul Company, the Association in like manner as on original execution, by a formal instrument in writing, acknowledged, ratified, and reaffirmed the same. Nowhere in the record of this litigation are there any verified pleadings denying the authority of the officers of the organization to act for it on either occasion, especially on the one ratifying the obligation, nor, as affects the latter, was any testimony offered even tending to so show. It was merely claimed as to the original instrument that—

"The execution of said deed of trust was ultra vires, in that two-thirds of the total membership of said trustees, without including the said Love, Patton, and Smith, did not make said contract and authorize the execution of said mortgage."

[10] Furthermore, although the Crescent Association thus received the benefit of the entire $25,000, and renewed its obligation to pay it when the Mogul Company bought the notes, expressly then acknowledging that the extension thereby obtained was a consideration to it, neither it nor any of the other plaintiffs in error ever in fact tendered the Mogul Company the amount it had paid for the notes, notwithstanding the latter in open court demanded and offered to accept such payment.

In such circumstances they were not entitled to equitable relief against the contract.

From these conclusions it follows that, in our opinion, the trial court did not err in rendering the judgment appealed from. Its action has accordingly been affirmed.

Affirmed.